NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0830n.06

No. 11-3288

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

*Aug 02, 2012*

LEONARD GREEN, Clerk

PRINTING SERVICE COMPANY,

    Plaintiff-Appellee,

           v.

GRAPHIC COMMUNICATIONS CONFERENCE
OF THE INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL 508 OF DISTRICT
COUNCIL 3,

    Defendant-Appellant.

On Appeal from the United
States District Court for the
Southern District of Ohio

---

**Before:**     **GUY and DONALD, Circuit Judges; O'MEARA, District Judge.**[*]

    **RALPH B. GUY, JR., Circuit Judge.**     In this appeal, a labor union challenges the district court's decision to vacate an arbitration award. The arbitrator found for the union, determining that the collective bargaining agreement (CBA) between the union and plaintiff applied to the purchase and use of a digital printer by plaintiff's related entity, a non-union shop. Because we find that the district court erroneously found the matter was not subject to arbitration, we reverse.

---

[*]The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

**I.**

Plaintiff, Printing Service Company ("Printing Service"), is a lithographic printing company with a printing plant in Springboro, Ohio. The owners of Printing Service also own several additional affiliated companies. These include Concept Imaging ("Concept"), which they purchased in 1995, and InnoMark, which is described as the "corporate umbrella" over the several related entities. In 2001, both Printing Service's and Concept's operations were moved to separate spaces within one building in Springboro, which is owned by the owners of the corporations.

While Concept has had some digital printing capacity for at least a decade, Concept's business has always primarily been in "prepress" work, a shorthand term for preparation work, such as proofing plates, for lithographic presses. Work for Printing Service comprises a large portion of Concept's business.

Certain of Printing Service's employees at its Springboro plant are represented by defendant, Graphic Communications Conference of the International Brotherhood of Teamsters ("union"). Printing Service and the union are long-term signatories to a series of CBAs, which organize two groups of Printing Service employees: the "litho unit," at issue here, and bindery employees, not involved in this dispute. A provision in the CBA addresses the mechanism for agreeing upon wages and conditions of work in the event of Printing Service's installation of new or improved machines or processes. Concept, a non-union shop, is expressly excluded from coverage by the CBA, as are InnoMark and other specified entities under the same corporate umbrella.

In 2007 and 2008, Concept purchased and installed new, significant pieces of digital printing equipment with large commercial printing capabilities. The instant dispute arose after the 2008 purchase of a Kodak NexPress. The NexPress has the capacity to produce vastly greater amounts of printed material than digital printers previously operated by Concept. Concept operated the NexPress using its non-unionized employees. The grievance that initiated this dispute was filed by a union shop steward and Printing Service employee. He asserted that the "newly acquired digital press" (i.e. the NexPress machine) was a "violation of but not limited to article 3 of the CBA."[1]

Printing Service denied the grievance, stating that the piece of equipment was "simply a very large copier." The denial further asserted that the union did not have jurisdiction over Concept's equipment for the reason that it was neither operated by bargaining unit members nor covered by the CBA.

The grievance then proceeded to arbitration. Arbitrator Mollie Bowens was mutually selected by the parties. The parties provided briefing before and after a hearing. The arbitrator ruled in favor of the union, finding that the dispute was arbitrable and that the NexPress work assignment violated the CBA. In accordance with that finding, the arbitrator upheld the grievance filed by the union and found the NexPress work was the domain of union employees.

Printing Service filed this action in federal district court, seeking vacation of the arbitrator's award. The district court determined that the arbitrator, in finding Concept to be

---

[1]The pertinent provisions of Article 3, entitled "Jurisdiction," are set forth below. Article 3 describes which Printing Service employees, by function, are covered under the CBA.

constrained by a CBA from which it was expressly excluded, exceeded the scope of arbitrable issues. The district court granted Printing Service's motion for summary judgment and vacated the arbitration award. This appeal followed.

**II**.

This lawsuit was brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Section 301(a) provides that lawsuits alleging violations of contracts between unions and employers may be brought in United States district courts having jurisdiction over the parties. 29 U.S.C. § 185(a).

When a CBA provides for arbitration of a dispute, and a subsequent lawsuit seeks judicial review of the arbitrator's award, the scope of review is very limited. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). As the district court noted, vacation of an arbitrator's award may not be based on a disagreement with the arbitrator's construction of a contract or determination that the arbitrator erred in resolving the merits of the dispute. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 39 (1987).

In 2007, our circuit heightened the deference to be applied to arbitral decisions. As described in *Michigan Family Resources, Inc. v. Service Employees International Union Local 517M*, 475 F.3d 746 (6th Cir. 2007) (en banc), we now limit our review to whether the award constituted a "procedural aberration:"

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract?"

*Id*. at 753. Though this increased deference means relatively few arbitral awards are disturbed, if the terms of a CBA are ignored, vacation of the award is the appropriate remedy. *See Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 412 (6th Cir. 2008).

Where, as here, "the parties 'clearly and unmistakably' submit the issue [of arbitrability] to the arbitrator 'without reservation,' then the parties have waived their right to have a court make the decision." *Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am.*, 440 F.3d 809, 813 (6th Cir. 2006) (citations omitted). We accord deference to the arbitrator's determination on that issue, as we do a decision on the merits; the decision may not be disturbed absent a finding that it failed to "'draw its essence from the collective bargaining agreement.'" *Id*. at 814 (citing *Vic Wertz Distrib. Co. v. Teamsters Local 1038*, 898 F.2d 1136, 1140 (6th Cir. 1990) (quoting *Eberhard Foods, Inc. v. Handy*, 868 F.2d 890, 891 (6th Cir. 1989)).

When we review the determination of a district court on this issue, our review is conducted *de novo*. *See Equitable Res., Inc. v. United Steel Workers Int'l Union*, 621 F.3d 538, 544-45 (6th Cir. 2010). That review focuses "'on the arbitrator's analysis, not that of the district court.'" *Titan Tire Corp. of Bryan v. United Steelworkers of Am., Local 890L*, 656 F.3d 368, 371 (6th Cir. 2011) (quoting *Truck Drivers Local No. 164 v. Allied Waste Sys., Inc.*, 512 F.3d 211, 216 (6th Cir. 2008)).

The pertinent provisions of the CBA in place at the time of this dispute, effective January 1, 2006 through December 31, 2011, are as follows:

**ARTICLE 1: ARTICLES OF AGREEMENT**

1.1     Both parties agree that their common objective is the mutual welfare of the Concern and its employees.  In the interest of sound collective bargaining and the promotion of industrial peace they will at all times abide by the terms of this agreement and observe the spirit of its intent.

1.2     It is hereby agreed by and between the Printing Service Company, Dayton, Ohio hereinafter know [sic] as the "Company" and the Graphic Communications Conference of the International Brotherhood of Teamsters, Local 508-M of District Council 3 hereinafter known as the Union, as follows:

**ARTICLE 2: RECOGNITION**

2.1     The Company recognizes Graphic Communications Conference of the International Brotherhood of Teamsters, Local 508-M of District Council 3 as the exclusive representative for the purposes of collective bargaining in respect to rates of pay, hours of employment, and other conditions of employment for all production employees within the geographic jurisdiction of the Union, whose rates of pay are agreed upon in a minimum scale attached to this contract; provided, however, that for the purposes of this provision the geographical jurisdiction hereinbefore referred to of the Union shall be defined as an area equal to the entire State of Ohio.  The provisions of this Recognition Clause and all other provisions of this agreement shall not apply or cover Grafcor Inc., Concept Imaging and Prestige Display and Packaging; PakMark; GroMark; and, Innomark

> A.     All employees, regardless of title, performing production work shall be considered members of the Bargaining Unit and shall be covered by this Agreement except as provided in (B) below. . . .

**ARTICLE 3: JURISDICTION**

3.1     All employees performing production work, processes and operations directly associated or related to lithography, offset (including wet or dry) and photoengraving including any technological or other change, evolution from or substitution for any production work, process or operation now or hereafter utilized in any way of the methods described and in conjunction with the New Machines or Processes clause, and whose job classification and rates of pay are set forth in the wage scales appended hereto, as may be amended from time to time shall be covered by the terms of this contract.  Nothing herein shall be

construed as adding to, modifying or detracting from recognition, Article 2 of this contract. . . .

## ARTICLE 16: NEW MACHINES OR PROCESSES

16.1 In the event of the installation of new or improved machines or processes as covered in the Jurisdiction Article of this contract for production work, such machines or processes must be operated by qualified personnel under this contract and under a scale of wages and conditions of work agreed upon by a joint committee of four (4) members each party hereto choosing and appointing two (2) members thereof. The wages whenever finally adopted shall be retroactive to the date of beginning of operation of such equipment.

16.2 The Company shall give at least sixty (60) days' [sic] notice to the Union when purchasing new press equipment covered by the Jurisdictional requirements of the within contract before the permanent installation of such new equipment. Upon request of the Union, the Company shall meet promptly with the Union for consideration of operation of such equipment. Upon compliance with the foregoing by the employer, production on such new equipment shall not be interfered with.

16.3 In the event the Company fails to give such notice, the new equipment shall not be operated until the Company gives notice. This provision shall only apply to new equipment which would be covered by this agreement pursuant to the terms of Article 3.

## ARTICLE 26: GRIEVANCE AND ARBITRATION

26.1 Any dispute, difference or disagreement between the Company and any employee, involving the meaning and application or interpretation of any provision of this Agreement shall constitute a grievance and must be taken up by the Union or any employee as follows: . . .

26.4 Only disputes involving the interpretation or application of this Agreement may be arbitrated. The arbitrator cannot modify, detract from, or alter the provisions of this Agreement, and the decision of the arbitrator shall be final and binding upon the parties. . . .

The arbitrator, in determining that the grievance was arbitrable, found it to be a valid

challenge to Articles 3 and 16 of the CBA. She then found that Concept, Printing Services,

and other related entities were all under the same "corporate umbrella" or parent company

of InnoMark. As a result, the arbitrator concluded that

> this is a "corporate family" and not, as the Company would have her believe, a group of independent companies. In making decisions about where to install "new or [technologically] improved [printing] machines", the owners are constrained by the Agreement that it [sic] negotiated with the Union at the Printing Services [sic] Company.

She next determined that the evidence showed there was a *quid pro quo* between the Union

and Printing Service—that Concept and other affiliated companies would be excluded from

the CBA on the basis that all printing was to be done by union members at Printing Service.[2]

Because, the arbitrator found, the NexPress produced such large-volume printing work, it (1)

represented a technological advance contemplated by the CBA; (2) was not the kind of

digital printing Concept had ever engaged in before; and (3) was printing work reserved

exclusively for union members under the agreement. She concluded that the grievance was

arbitrable and sustained it on the merits for the reason that "[t]he owners' decision to operate

the Kodak NexPress with non-union employees at Concept Imaging violates Articles 3 and

16 of the Agreement."

The district court, on the other hand, did not get past the question of whether the

grievance was arbitrable. Finding that Article 2 was plain and unambiguous in its exclusion

of Concept from the CBA, the district court determined that the arbitrator improperly

---

[2]The arbitrator's opinion's background section describes testimony of numerous witnesses concerning a "deal" reached in negotiating the CBA back in 1998, when the explicit exclusion of Concept was first included. She noted testimony stating that in 1998 Concept was "strictly a prepress operation," doing no printing of its own, and assurances given on behalf of the union that it would not attempt to organize the employees of Concept. The arbitrator cited the corresponding testimony of a Printing Service representative assuring the union that Concept "would never do any printing."

considered evidence outside of the agreement in reaching her conclusion. On appeal, the union asserts that the dispute is arbitrable and that it is "unquestionable" that the arbitrator was interpreting the labor agreement at issue. Quoting *Misco*, 484 U.S. at 38, the union argues that because the arbitrator was "arguably construing . . . the contract and acting within the scope of [her] authority," even if the district court believed she made errors in interpretation, vacation of the award was not permitted.

The exclusion of Concept and other affiliated companies is set forth in CBA Article 2, Section 2.1, *supra*. While the arbitrator cited this provision, she also considered evidence presented at the hearing in determining that a "quid pro quo" agreement existed between the parties to the CBA. The arbitrator described this as an agreement by the union, beginning in 1998, "to not organize prepress work at Concept Imaging, in exchange for a work preservation clause at the Company." Noting that "[t]he Union has kept its part of this bargain," the arbitrator found the dispute to be arbitrable, and stated "[t]o rule otherwise would render the language contained in Articles 3 and 16 of the Agreement to be meaningless."

Although we do not agree with all of the analysis employed by the arbitrator, we agree with her conclusion that this matter was arbitrable. The error by the district court was to read too broadly the language in the recognition clause that "this agreement shall not apply or cover . . . Concept Imaging." This language obviously would not grant to Concept any of the benefits of the CBA nor access to its grievance procedures, nor would Concept be subject to the "nuts and bolts" provisions that governed the day-to-day relationship between Concept

and Printing Service. That does not mean, however, that something that occurred at Concept could not have an impact on the CBA between Printing Service and the union. For example, if the decision were made to transfer all of the work being performed by Printing Service to Concept, no serious argument could be advanced that such action would not trigger the provisions of the CBA. It is not what went on at Concept that is the trigger point but rather what did not occur at Printing Service.

The key decision by the arbitrator was that the work in question was Printing Service's work. That decision is non-reviewable as it is the type of question left to the purview of arbitrators under a CBA of this nature. The fact that Concept was not covered by this CBA does not dictate a different result.

**REVERSED** and **REMANDED** with instructions to reinstate the award of the arbitrator.