RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0027p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ELECTRONIC DATA SYSTEMS CORPORATION,
        *Petitioner-Appellant,*

    *v.*

MILTON DONELSON; CORTEZ LOTTS,
        *Respondents-Appellees.*

Nos. 06-1211/1478

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-71584—Marianne O. Battani, District Judge.

Argued: December 5, 2006

Decided and Filed: January 18, 2007

Before: MOORE and CLAY, Circuit Judges; BELL, Chief District Judge.[*]

---

## COUNSEL

**ARGUED:** David A. Posner, BAKER & HOSTETLER, Cleveland, Ohio, for Appellant. Wendell N. Davis, Jr., WENDELL N. DAVIS, JR. & ASSOCIATES, Southfield, Michigan, for Appellees. **ON BRIEF:** David A. Posner, BAKER & HOSTETLER, Cleveland, Ohio, for Appellant. Wendell N. Davis, Jr., WENDELL N. DAVIS, JR. & ASSOCIATES, Southfield, Michigan, for Appellees.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Respondents-Appellees Milton Donelson ("Donelson") and Cortez Lotts ("Lotts") (collectively, "Appellees") claimed that their former employer, Petitioner-Appellant Electronic Data Systems Corporation ("EDS"), discriminated against them in violation of Michigan law. The parties executed an arbitration agreement, and, after a hearing, a panel of three arbitrators awarded damages, attorney fees, and costs to both Donelson and Lotts. EDS subsequently petitioned the United States District Court for the Eastern District of Michigan for an order vacating the arbitration award. The district court denied the petition, and EDS now appeals. For the reasons set forth below, we **AFFIRM** the decision of the district court.

---

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

## I. BACKGROUND

Donelson and Lotts, both of whom are African-American, each worked for EDS for approximately five months in 2001. In May 2001, both were assigned to work under the supervision of Anne Hoffmaster ("Hoffmaster"), a Caucasian, who had recently returned to work after a maternity leave. During the next several months, Hoffmaster issued multiple disciplinary notices to both Donelson (for performance deficiencies) and Lotts (for chronic tardiness).[1] During this time, Hoffmaster displayed, in her work cubicle, a doll with a black face, suspended in the air by a rope around its neck. A few months after Hoffmaster's return, both Donelson (in June 2001) and Lotts (in July 2001) were fired. It is undisputed that Hoffmaster also participated in the terminations of two other African-American employees in the months following her return to EDS, during which period she was not involved in the firing of any Caucasian employee.

Donelson and Lotts filed separate suits against EDS in early 2002 (Donelson in February and Lotts in March), alleging that their terminations were the result of racial (with regard to both Donelson and Lotts) and disability (with regard to Donelson) discrimination, in violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), MICH. COMP. LAWS §§ 37.2101 et seq., and the Persons with Disabilities Civil Rights Act ("PDCRA"), MICH. COMP. LAWS §§ 37.1101 et seq. On February 26, 2003, the parties reached an agreement to arbitrate the disputes, pursuant to which Donelson and Lotts dismissed their claims against EDS. The agreement provided for a two-day hearing before a panel of three arbitrators, followed by briefing to be submitted within two weeks of the hearing and a panel decision to be rendered within two weeks of the completion of briefing.

The arbitration hearing, of which no record was made, took place on September 28 and 29, 2004. At the inception of the hearing, counsel for EDS requested that the arbitrators set forth, in their award, findings of fact and conclusions of law, pursuant to the rule set forth in *Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208 (Mich. Ct. App. 1999). The panel took the request under advisement. After the hearing, the parties agreed to extend the briefing and award deadlines. Briefing was completed on December 3, 2004.

On January 3, 2005, counsel for EDS submitted a written objection to the panel, arguing that, because the arbitration panel had not issued a decision within two weeks of the completion of briefing, as required by the arbitration agreement, the panel no longer possessed the power to do so. Notwithstanding EDS's letter, on January 19, 2005, the panel awarded damages to Donelson in the amount of $95,000 and to Lotts in the amount of $35,000. Neither award set forth findings of fact or conclusions of law, but each included a request for additional briefing on the proper amount of attorney fees to be awarded. Approximately one month later, Donelson and Lotts submitted the requested briefs, to which EDS objected on the grounds that the arbitrators lacked the authority to award attorney fees and that, in any event, no evidence concerning fees had been timely submitted.

On April 21, 2005, EDS filed an application in the United States District Court for the Eastern District of Michigan to vacate the arbitration awards. Subsequently, on May 10, 2005, the arbitration panel awarded attorney fees and costs to Donelson in the amount of $39,506 plus interest and to Lotts in the amount of $20,696 plus interest. On December 9, 2005, the district court denied EDS's application to vacate, and EDS now appeals.

---

[1] It is not entirely clear from Donelson's and Lotts's filings whether they deny the alleged infractions for which the warnings were issued, but, in any event, they allege that the repeated disciplinary actions were not the true reasons for their terminations.

## II. ANALYSIS

### A. Standard of Review

"The standard of appellate review of a district court's decision whether to vacate or confirm an arbitration award is governed by *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 420 (6th Cir. 1995).

> [T]here is no *special* standard governing [the] review of a district court's decision in these circumstances. Rather, review of, for example, a district court decision confirming an arbitration award on the ground that the parties agreed to submit their dispute to arbitration, should proceed like review of any other district court decision finding an agreement between parties, *e.g.*, accepting findings of fact that are not "clearly erroneous" but deciding questions of law *de novo*.

*Kaplan*, 514 U.S. at 947-48; *see also Jaros*, 70 F.3d at 420 ("In light of *Kaplan*, it is clear that . . . . [f]indings of fact are reviewed for clear error and questions of law are reviewed *de novo*.").

### B. Legal Standard

A court's power to vacate an arbitration award is limited in scope. Specifically, we have held that

> [a] court may vacate an arbitration award in the following situations: (1) where the award was procured by fraud, (2) where the arbitrators were evidently partial or corrupt, (3) where the arbitrators misbehaved so that a party's rights were prejudiced, or (4) where the arbitrators exceeded their powers or executed them so that a final, definite award was not made. In addition, a reviewing court may vacate an award where the arbitrators have manifestly disregarded the law.

*Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir.), *cert. denied*, 531 U.S. 878 (2000) (internal citation omitted); *see also* 9 U.S.C. § 10(a) (Federal Arbitration Act ("FAA")). EDS contends that the arbitration panel in this case both exceeded its powers and manifestly disregarded the law.

### C. The Panel Did Not Exceed Its Powers

"Arbitrators exceed their power when they 'act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law.'" *Saveski v. Tiseo Architects, Inc.*, 682 N.W.2d 542, 544 (Mich. Ct. App. 2004) (quoting *Detroit Auto. Inter-Ins. Exch. v. Gavin*, 331 N.W.2d 418, 430 (Mich. 1982)). In this case, EDS argues that the arbitrators exceeded their power by (1) failing to set forth findings of fact and conclusions of law, as required by the ELCRA, MICH. COMP. LAWS § 37.2101 et seq., and by the decision of the Michigan Court of Appeals in *Rembert*, 596 N.W.2d 208, and (2) awarding attorney fees and costs to both Donelson and Lotts despite the fact that the arbitration agreement provided only for an award of damages.

#### 1. The Form of the Awards

Although the ELCRA itself does not mention arbitration, "the overwhelming majority of federal and . . . state courts have held that . . . agreements [to arbitrate statutory civil-rights claims] are enforceable, *provided that the arbitration procedures are fair . . . .*" *Rembert*, 596 N.W.2d at 210 (emphasis added). The *Rembert* court imposed a requirement that arbitral awards include findings of fact and conclusions of law, "as a necessary corollary to [its] holding regarding the standard of judicial review." *Id.* at 230. The holding regarding the standard of review, in turn,

applies—by its own terms—only to predispute arbitration agreements: "[W]e hold that a *predispute* agreement to arbitrate a statutory employment discrimination claim will be reviewed under the standard enunciated by our Supreme Court in *Gavin*." *Id.* (emphasis added).

The limited scope of the *Rembert* holding is consistent with that court's discussion of the public-policy interests implicated by the arbitration of statutory employment-discrimination claims:

> Opponents of arbitration in this case, as elsewhere, generally acknowledge the public policy favoring arbitration, but claim that it ought not apply to claims arising under public interest statutes such as civil rights statutes. They argue that the public policy advanced by the statutes would be undermined if these disputes were addressed in the relatively private forum of arbitration. These very arguments were thoroughly considered and rejected by the United States Supreme Court in a trio of cases known as the *Mitsubishi* trilogy and, later, in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). Although initially reluctant to endorse *predispute* arbitration agreements of statutory claims, federal law has long since strongly endorsed arbitration of statutory claims.
>
> *Wilko v. Swan*, 346 U.S. 427 (1953), is representative of the initial skepticism toward arbitration. There, the United States Supreme Court held that *predispute* agreements to arbitrate claims arising under the Securities Act of 1933 were void under § 14 of the Securities Act, which nullified stipulations to waive compliance with the Securities Act. Like the opponents of arbitration here, the Court in *Wilko* equated a waiver of a judicial forum with a waiver of compliance with the substantive provisions of the statute.
>
> *Wilko* has since been overruled, and its entire rationale has been thoroughly discredited and unequivocally rendered obsolete by the *Mitsubishi* trilogy. In this trilogy, the Supreme Court repudiated its former characterization of arbitration as a second-rate forum in which statutory rights are necessarily diminished. Instead, the Court recognized arbitration as an efficacious means for parties to enforce their statutory rights and held that parties who had agreed to arbitrate would be bound by those agreements.

596 N.W.2d at 216 (emphases added) (internal citations and footnotes omitted).

The quoted language indicates that the *Rembert* court was concerned with protecting employees who prospectively waive their right to a judicial forum as a condition of employment. *See also id.* at 224 n.25 ("[W]e agree with the reasoning in [*EEOC v. Frank's Nursery & Crafts, Inc.*, 966 F. Supp. 500, 503 (E.D. Mich. 1997), *rev'd on other grounds*, 177 F.3d 448 (6th Cir. 1999)], which concluded that 'a *prospective*, voluntary agreement to proceed to arbitration' is not the sort of coercive action that the 1991 legislative history cautioned against." (emphasis added)). In order to minimize the danger that such waivers will eviscerate substantive statutory protections, *Rembert* requires arbitrators in cases involving predispute arbitration agreements to set forth the reasoning underlying their decisions.

Donelson's and Lotts's claims are not, however, of the type contemplated by the *Rembert* court, and it is not for us to extend that court's holding. The arbitration agreements at issue here were not executed until *after* the alleged statutory violations had already taken place and, thus, could not possibly have constituted waivers of statutory compliance. Moreover, there is little reason for concern regarding coercion in this case, as Donelson and Lotts signed the agreements not as

prerequisites for employment but, rather, after they had already been discharged and—importantly—after they had retained counsel and had filed lawsuits.**2**

EDS points out that the Michigan Court of Appeals applied *Rembert* to a post-dispute arbitration agreement in *Biram v. City of Detroit*, No. 256131, 2006 WL 171508, at *2 & n.1 (Mich. Ct. App. Jan. 24, 2006). The *Biram* opinion is, however, unpublished, and the local rules of the Michigan Court of Appeals provide that unpublished opinions constitute persuasive, but not binding, precedent. MICH. APP. R. 7.215(C)(1). Indeed, those very rules also provide that:

> A court opinion *must* be published if it:
>     (1) establishes a new rule of law;
>     (2) construes a provision of a constitution, statute, ordinance, or court rule;
>     (3) alters or modifies an existing rule of law or extends it to a new factual context
>     . . . .
>     (5) involves a legal issue of continuing public interest; [or]
>     . . . .
>     (7) creates or resolves an apparent conflict of authority . . . .

MICH. APP. R. 7.215(B) (emphasis added). The failure of the *Biram* court to publish its opinion, which—at the very least—applies the *Rembert* standard to a "new factual context," *id.*, is, thus, puzzling.

Absent a statutory mandate, "[the Michigan] Supreme Court . . . recognized, [in *Gavin*] . . . that '[t]here is no requirement that a verbatim record be made of private arbitration proceedings, there are no formal requirements of procedure and practice beyond those assuring impartiality, and no findings of fact or conclusions of law are required.'" *Saveski*, 682 N.W.2d at 544 (quoting *Gavin*, 331 N.W.2d at 428). In light of *Biram*'s dearth of reasoning, its apparent inconsistency with the rationale underlying *Rembert*,**3** and its status as a non-binding precedent issued by the Michigan Court of Appeals, we decline to rely upon it as an indicator that the Michigan Supreme Court would apply the special *Rembert* requirement, rather than the ordinary *Gavin* rule, in the circumstances of this case. Accordingly, because the panel awards were not required to include findings of fact or conclusions of law, and because "the Court in *Gavin* clearly held that . . . a reviewing court should not use the lack of a clear record as an impediment to its confirmation of an arbitration award," *Saveski*, 682 N.W.2d at 544, we **AFFIRM** the district court's determination that the arbitration awards did not exceed the arbitration panel's powers.

### 2. The Awards of Attorney Fees and Costs

Michigan law provides that "damages [under the ELCRA] . . . includ[e] reasonable attorney's fees." MICH. COMP. LAWS § 37.2801(3). EDS argues, however, that the arbitration panel was not

---

**2** An argument might be made that civil-rights statutes signify areas of particular legislative concern and implicate fundamental rights and, thus, that courts should strive to ensure procedural and substantive fairness in the arbitration of claims under such statutes. This argument proves too much, however, in that it suggests that statutory civil rights claims should be excluded altogether from the class of arbitrable claims—a contention that the *Rembert* court expressly rejected. 596 N.W.2d at 216.

**3** In other recent decisions, the Michigan Court of Appeals has expressly characterized *Rembert* as applying to *predispute* agreements. *See, e.g.*, *Breitenbeck v. Merillat Indus., L.L.C.*, No. 258135, 2006 WL 859421, at *1 (Mich. Ct. App. Apr. 4, 2006); *Oimas v. Tradewinds Aviation, Inc.*, No. 247762, 2005 WL 1683543, at *2 n.3 (Mich. Ct. App. July 19, 2005), *app. denied*, 717 N.W.2d 330 (Mich. 2006); *Leonard v. Art Van Furniture, Inc.*, No. 243139, 2004 WL 1254330, at *1 (Mich. Ct. App. June 8, 2004).

empowered to consider an issue raised for the first time only in post-hearing briefing or to issue an award after the expiration of the two-week deadline set forth in the arbitration agreement.

The record indicates that EDS demonstrated, by requesting and conceding to numerous delays and extensions throughout the course of the arbitration proceedings, that time was not of the essence. In so doing, EDS waived the specific time limitations included in the agreement. *See Kennedy v. Brady*, 204 N.W.2d 779, 780-81 (Mich. Ct. App. 1972), *cited in Beaumount Corp. v. Slater*, No. 237412, 2003 WL 1861300, at *5 (Mich. Ct. App. Apr. 8, 2003). "Where a stipulation for performance at a particular time has been waived, the party in whose favor the waiver operates is therefore bound only to perform within a reasonable time . . . ." *Kennedy*, 204 N.W.2d at 781 (internal quotation marks omitted). Accordingly, because Appellees briefed the issue of attorney fees and costs as soon as was reasonably practicable, and because the arbitration panel rendered its decision within approximately six weeks of the conclusion of a lengthy post-hearing briefing period, we **AFFIRM** the district court's determination that that the arbitration panel did not exceed its powers by disregarding the specific time limits governing the submission of evidence and the filing of the award.

## D. The Arbitrators Did Not Manifestly Disregard the Law

Finally, EDS contends that the arbitration panel manifestly disregarded the law by refusing to require Donelson and Lotts to establish a prima facie case of discrimination under the ELCRA. "An arbitration panel acts with manifest disregard if '(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle.'" *Dawahare*, 210 F.3d at 669 (quoting *Jaros*, 70 F.3d at 421).

Because "[a]rbitration, by its very nature, restricts meaningful legal review in the traditional sense," *Gavin*, 331 N.W.2d at 428, "[t]his court has emphasized that manifest disregard of the law is a very narrow standard of review," *Jaros*, 70 F.3d at 421. "An arbitration decision 'must fly in the face of established legal precedent' for us to find manifest disregard of the law." *Dawahare*, 210 F.3d at 669 (quoting *Jaros*, 70 F.3d at 421). "If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside." *Jaros*, 70 F.3d at 421.

Moreover, "[a]rbitrators are not required to explain their decisions. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law." *Dawahare*, 210 F.3d at 669.

> As a general observation, courts will be reluctant to modify or vacate an award because of the difficulty or impossibility, without speculation, of determining what caused an arbitrator to rule as he did. The informal and sometimes unorthodox procedures of the arbitration hearings, combined with the absence of a verbatim record and formal findings of fact and conclusions of law, make it virtually impossible to discern the mental path leading to an award. Reviewing courts are usually left without a plainly recognizable basis for finding substantial legal error. It is only the kind of legal error that is evident without scrutiny of intermediate mental indicia which remains reviewable . . . . In many cases the arbitrator's alleged error will be as equally attributable to alleged "unwarranted" factfinding as to asserted "error of law." In such cases the award should be upheld since the alleged error of law cannot be shown with the requisite certainty to have been the essential basis for the challenged award and the arbitrator's findings of fact are unreviewable.

*Gavin*, 331 N.W.2d at 428.

Because no record exists of the arbitration hearing held in this case, it is impossible to determine whether the evidence presented by Donelson and Lotts established a prima facie case under the ELCRA. Absent such a record, and in light of the undisputed facts that Hoffmaster's cubicle contained a black-faced doll suspended by its neck and that Hoffmaster participated in the terminations of four African-American and no Caucasian employees during the period in which Donelson and Lotts were fired, we cannot determine that a "legal error . . . is evident without scrutiny of intermediate mental indicia." *Id.* at 428. Accordingly, we **AFFIRM** the district court's determination that the arbitrators did not manifestly disregard the law.

## III. CONCLUSION

We **AFFIRM**, for the reasons stated above, the district court's judgment that the arbitration panel did not exceed its powers or manifestly disregard the law.