RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0214p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
―――――――――――

SAID B. SAMAAN,

                *Plaintiff-Appellant,*

    v.

GENERAL DYNAMICS LAND SYSTEMS, INC.,

                *Defendant-Appellee.*

No. 15-2277

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-13869—Denise Page Hood, Chief District Judge.

Argued: July 26, 2016

Decided and Filed: August 31, 2016

Before: GILMAN, WHITE, and STRANCH, Circuit Judges.
―――――――――――

### COUNSEL

**ARGUED:** David L. Haron, HARON LAW GROUP, PLC, Farmington Hills, Michigan, for Appellant. Thomas A. Cattel, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC, Birmingham, Michigan, for Appellee. **ON BRIEF:** David L. Haron, HARON LAW GROUP, PLC, Farmington Hills, Michigan, for Appellant. Thomas A. Cattel, Benjamin A. Anchill, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC, Birmingham, Michigan, for Appellee.

―――――――――――

### OPINION

―――――――――――

RONALD LEE GILMAN, Circuit Judge. Said B. Samaan is a former employee of General Dynamics Land Systems, Inc. (General Dynamics or the Company), which designs, develops, and manufactures combat systems for various customers, including the U.S. Army.

1

General Dynamics suspended Samaan without pay after he voiced concerns to Army personnel that the Company was submitting fraudulent claims for payment on one of its Army contracts. Although General Dynamics does not dispute the relative timing of these two events, it denies any causal relationship.

Believing otherwise, Samaan filed the instant suit against General Dynamics following his subsequent resignation. Samaan claimed, among other things, that the Company retaliated against him for exposing its allegedly fraudulent conduct. When General Dynamics asserted that Samaan's employment agreement required the arbitration of his claims, the parties agreed to arbitrate. The arbitrator subsequently held a hearing on General Dynamics's motion for summary disposition, after which he issued an award in favor of the Company. Samaan then filed a motion in the district court to vacate the arbitration award. The court denied the motion. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.    Factual background

Samaan, who had been employed as an engineer with General Dynamics since 1977, came to believe that the Company was using the wrong shock-and-vibration testing methods on Stryker armored vehicles developed for use by the Army in Afghanistan and Iraq. The use of the allegedly incorrect testing methods led, in turn, to General Dynamics submitting purportedly erroneous reports detailing the shock-and-vibration specifications for the vehicles.

Samaan alleged that, on numerous occasions between 2004 and 2010, he raised his concerns with the shock-and-vibration testing and the corresponding reports to various General Dynamics personnel. According to Samaan, General Dynamics failed to take appropriate action to remedy these deficiencies. He therefore "filed a formal claim of data misrepresentation, fraud, and retaliation" with the Company's Human Resources Department in the fall of 2010.

General Dynamics allegedly gave Samaan his first poor performance evaluation in January 2011. Samaan contends that he was then told that his evaluation "would improve if he would 'forget' about the testing misrepresentation and fraud." He responded by filing a second

complaint with the Human Resources Department. In addition, Samaan escalated his concerns about the shock-and-vibration testing—this time to the president, vice president, and general counsel of General Dynamics. But they declined to alter the testing. General Dynamics contends that it responded to Samaan's "concerns by conducting multiple detailed investigations, and determined at the end of each of those investigations that [his] allegations were unfounded and that its shock and vibration testing procedures were appropriate under the Army's testing standard."

In May and June 2011, dissatisfied with the responses that he had received inside General Dynamics, Samaan voiced his concerns regarding the testing to the Army's liaison to the Company at the Army's Aberdeen Test Center. On June 9, 2011, after Samaan informed personnel at General Dynamics of his discussions with the liaison, he was "suspended without pay pending an investigation into his complaints and objections." General Dynamics asserts that it launched the investigation after learning that Samaan had violated Company policy by sending sensitive corporate information to two personal email accounts belonging to himself and his son. Samaan subsequently resigned on July 1, 2011, after the Human Resources Department allegedly notified him that it would be recommending his termination.

**B.      Procedural background**

*1.  Proceedings prior to arbitration*

In September 2011, Samaan filed a complaint against General Dynamics in the United States District Court for the Eastern District of Michigan. Samaan alleged, in his capacity as a relator, that General Dynamics had "presented claims for payment to the United States knowing such claims were false," in violation of the False Claims Act (FCA), 31 U.S.C. §§ 3729–33, based on the purportedly erroneous shock-and-vibration specifications detailed in its reports to the Army. In his personal capacity, Samaan alleged that General Dynamics had retaliated against him in violation of the FCA, the Michigan Whistleblowers' Protection Act (WPA), Mich. Comp. Laws §§ 15.361–69, and Michigan public policy. Samaan never submitted the complaint to the U.S. Attorney General for consideration of whether to intervene in Samaan's relator claim.

He subsequently filed an amended complaint, adding claims of age discrimination under both federal and Michigan law, but removing his claim as a relator under the FCA.

In March 2012, General Dynamics filed a motion to dismiss the amended complaint or, in the alternative, to stay the action and compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16. General Dynamics supported its motion by arguing that, as a condition of Samaan's employment, he was required to arbitrate his claims against the Company. During a hearing on General Dynamics's motion in May 2012, Samaan agreed to arbitrate the claims set forth in his amended complaint. The district court then entered an order granting General Dynamics's motion, dismissing the amended complaint without prejudice, and retaining jurisdiction in accordance with the FAA for the purpose of "confirming, vacating or correcting any arbitration award and enforcing the parties' arbitration agreement."

### 2. *Proceedings during arbitration*

Samaan and General Dynamics subsequently executed, through counsel, a written arbitration agreement (the Agreement). The Agreement named James J. Rashid, a former state-court judge in Michigan, as the sole arbitrator, and it delineated procedures for discovery, dispositive motions, and an "arbitration hearing." With respect to dispositive motions, the Agreement contemplated "a hearing ordered by the Arbitrator . . . as the Arbitrator deems necessary." As for the arbitration hearing, the parties could present documentary evidence as well as witnesses who would be subject to both direct and cross-examination. The Agreement further mandated that the "award shall be made no later than 30 days from the date of the closing of the hearing."

In July 2013, following approximately 12 months of discovery, General Dynamics filed a motion for summary disposition with Judge Rashid. After Samaan filed a response to the motion and a sur-reply to General Dynamics's reply, Judge Rashid held a hearing on the Company's motion on November 18, 2013. The hearing was neither recorded nor transcribed. Despite the absence of any record evidence concerning the content of the hearing, Samaan's appellate brief advances the following narrative of the proceedings:

> Samaan estimates [that the hearing] lasted ten minutes total. Oral arguments briefly focused on Samaan's claim of age discrimination. Each party spoke for approximately five minutes. The arbitrator spent the next thirty minutes focused on two subjects. First, he insisted Samaan "must settle" because the arbitrator could not or wished not to conduct a trial. Second, the arbitrator reflected on his own career disappointment when he was circuit judge in Wayne County, Michigan. He recalled that he was transferred unceremoniously from one court to another. Samaan understood that the arbitrator was attempting to use his own personal experience as an example, urging Samaan to follow suit by accepting his constructive discharge and moving on.
>
> Samaan alleges that during the brief oral arguments, the arbitrator declared that he had already reviewed General Dynamics' Briefs and the accompanying documents that were submitted in paper format. However, the arbitrator stated that he had not had a chance to review Samaan's briefs and documents that were submitted because they had been submitted electronically. Shortly thereafter, the arbitrator stated that the case was too legally "complicated" for him. . . .

General Dynamics disputes the accuracy of Samaan's recollection. In particular, the Company does not recall Judge Rashid ever saying that the case was "too complicated" for him or that he had not read Samaan's briefs.

On May 17, 2015, Judge Rashid issued a seven-page award granting General Dynamics's motion for summary disposition. Judge Rashid first evaluated two elements common to each of Samaan's legal theories—namely, whether Samaan had demonstrated "an adverse employment action and that the legitimate non-discriminatory reasons given for his termination are pretext." With respect to the adverse employment action, Judge Rashid concluded that there was no genuine dispute of material fact that Samaan's poor performance evaluation failed to qualify as an adverse employment action because there was no evidence that the evaluation impacted Samaan's compensation. Judge Rashid further concluded that there was no genuine dispute that Samaan's resignation did not qualify as an adverse employment action because General Dynamics's conduct was not "so severe that a reasonable person in the employee[']s place would feel compelled to resign." Turning to pretext, Judge Rashid concluded that there was no genuine dispute that the Company's stated reason for recommending termination—that Samaan forwarded "company sensitive information" to personal email accounts, in violation of General Dynamics's policy—was not pretextual.

Judge Rashid then analyzed each of Samaan's claims in more detail and concluded that none had merit. For instance, Judge Rashid concluded that the FCA claim failed because there was "no evidence to show that [Samaan's] complaints were done in furtherance of a F.C.A. action." And Judge Rashid decided that Samaan's WPA claim failed because there was "no evidence that [Samaan] reported or was 'about to report' to a 'public body' as defined by the statute." Accordingly, Judge Rashid dismissed all of Samaan's claims with prejudice.

### 3. *Proceedings after the arbitrator's award*

Samaan subsequently filed a pro se motion in the district court to vacate the arbitration award under the FAA. *See* 9 U.S.C. § 10. General Dynamics filed a response requesting that the court deny Samaan's motion and confirm the award. In September 2015, the court denied Samaan's motion, confirmed the award in favor of General Dynamics, and denied all other pending motions as moot. Samaan now appeals.

## II. ANALYSIS

### A.    Standard of review

When reviewing a district court's decision either vacating or confirming an arbitrator's award under the FAA, we apply the clear-error standard to the court's findings of fact, but we review questions of law de novo. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 420 (6th Cir. 1995) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947–49 (1995)).

### B.    The Federal Arbitration Act

Generally, there are two flavors of arbitration cases: labor arbitrations pursuant to collective-bargaining agreements and commercial arbitrations pursuant to other agreements. Review of the former class of cases is governed by federal labor law, such as the Railway Labor Act and the Labor Management Relations Act, *see Bhd. of Locomotive Eng'rs & Trainmen v. United Transp. Union*, 700 F.3d 891, 899–900 (6th Cir. 2012); *Titan Tire Corp. of Bryan v. United Steelworkers of Am., Local 890L*, 656 F.3d 368, 371–72 (6th Cir. 2011), whereas the

FAA frames the review of the latter, *see Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008).

Although labor arbitrations and commercial arbitrations share certain legal concepts, these areas of law are not interchangeable. This distinction reflects the understanding that, "[r]ather than signaling the 'breakdown in the working relationship of the parties,' as it does in a commercial setting, labor arbitration 'is at the very heart of the system of industrial self-government.'" *Bhd. of Locomotive Eng'rs & Trainmen*, 700 F.3d at 900 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581 (1960)). Mindful of this distinction, we will apply the FAA to our review of the instant case because it falls into the commercial-arbitration category.

The FAA expresses a "federal policy favoring arbitration." *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989)). "When courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence." *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 305 (6th Cir. 2008) (brackets and citation omitted). "Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006) (brackets, citation, and emphasis omitted).

On application of one of the parties, a district court possessing a basis for subject-matter jurisdiction independent of the FAA must issue an order confirming an arbitrator's award "unless the award is vacated, modified, or corrected as prescribed in" 9 U.S.C. §§ 10 and 11. 9 U.S.C. § 9; *see also Hall St.*, 552 U.S. at 581–82 (noting that the FAA "bestow[s] no federal jurisdiction" over "controversies touching arbitration"). Samaan requested that the district court vacate the award. An arbitration award can be vacated under the FAA in only four situations:

(1)     where the award was procured by corruption, fraud, or undue means;

(2)     where there was evident partiality or corruption in the arbitrators, or either of them;

(3)     where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *see also Hall St.*, 552 U.S. at 578 (holding that the statutory grounds enumerated in § 10 are the exclusive means under the FAA to vacate an arbitrator's award); *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 378 (6th Cir. 2008) (same).

Prior to the Supreme Court's decision in *Hall Street*, the Sixth Circuit held that, as an alternative to the grounds in 9 U.S.C. § 10, an arbitrator's award could be vacated on "a separate judicially created basis . . . where the arbitration award was made in manifest disregard of the law." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995) (citation and internal quotation marks omitted). Whether "manifest disregard of the law" may still supply a basis for vacating an arbitrator's award as "a judicially created supplement to the enumerated forms of FAA relief" after *Hall Street* is an open question. *Grain*, 551 F.3d at 380 (citation and internal quotation marks omitted); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010) (declining to decide whether the manifest-disregard standard of review survived *Hall Street* either "as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10").

We likewise have no need to resolve this question because Samaan does not argue in his appellate briefs that manifest disregard of the law is a basis for vacating the arbitration award. *See Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived."); *Solvay Pharm.*, 442 F.3d at 475 n.3 (declining to address whether manifest disregard of the law merited vacatur when the appellant "attack[ed] the lawfulness of the arbitration award" but did "not charge that such error was in 'manifest disregard of the law' or discuss any of our cases articulating the doctrine"). Accordingly, we will evaluate only whether Samaan's claims satisfy any of the grounds enumerated in 9 U.S.C. § 10(a).

**C.      Samaan's claims for vacatur under the FAA**

Like Gaul, Samaan's claims can be divided into three parts.  The first claim focuses on Samaan's argument that the arbitration award should be vacated because of the delay between the summary-disposition hearing and the issuance of the award.  Samaan's second claim is based on his contention that several of Judge Rashid's actions and inactions during the arbitration proceedings require vacatur.  Finally, Samaan argues that the award should be vacated because his actions fulfilled his moral and ethical obligations to expose fraud.  We will address each group of claims in turn.

### 1.  *Judge Rashid was not required to rule on General Dynamics's motion for summary disposition within 30 days of the motion hearing*

Samaan first argues that the arbitration award should be vacated because it was issued more than 30 days after the hearing on General Dynamics's motion for summary disposition.  To support this argument, Samaan points to the language in Paragraph 16 of the Agreement stating that "[t]he award shall be made no later than 30 days from the date of the closing of the hearing."  Samaan interprets this language to mean that Judge Rashid was required to issue his award within 30 days of the November 18, 2013 hearing on General Dynamics's motion for summary disposition.  Judge Rashid therefore "disregarded this unambiguous language" of the Agreement, the argument goes, by not issuing his award in favor of General Dynamics until May 17, 2015.  Samaan contends that by issuing a delinquent award, Judge Rashid exceeded his powers under the Agreement, thereby violating both 9 U.S.C. § 10(a)(4) and public policy.

"[T]he interpretation of an arbitration agreement is generally a matter of state law." *Stolt-Nielsen*, 559 U.S. at 681.  Accordingly, we "apply[] general state-law principles of contract interpretation to the interpretation of an arbitration agreement." *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989)).  These principles instruct courts to "enforce contract language in accordance with its plain and commonly used meaning, being careful to enforce specific and well-recognized terms." *Whitehouse Condo. Grp., LLC v. Cincinnati Ins. Co.*, 569 F. App'x 413, 416 (6th Cir. 2014).  But "[a] contract should be read as a whole instrument and with the goal of enforcing the intent of the parties." *Id.*  Moreover, "contracts

must be construed consistent with common sense and in a manner that avoids absurd results." *Kellogg Co. v. Sabhlok*, 471 F.3d 629, 636 (6th Cir. 2006).

When read in isolation, the above-quoted language of the Agreement appears to support Samaan's argument. A motion hearing is, after all, a hearing, and Paragraph 16 of the Agreement declares that "[t]he award shall be made no later than 30 days from the date of the closing of the hearing." There is a certain simplicity to this line of argument. Other provisions of the Agreement, however, reveal fatal flaws in Samaan's proposed interpretation.

Dispositive motions, like General Dynamics's motion for summary disposition, are governed by Paragraph 5 of the Agreement, which contemplates "a hearing ordered by the Arbitrator . . . as the Arbitrator deems necessary." This permissive language undercuts the argument that "the hearing" in Paragraph 16 includes a hearing on a dispositive motion because this inclusion would lead to nonsensical results. *See Kellogg Co.*, 471 F.3d at 636. To wit, if Paragraph 16 were deemed applicable to a hearing on a dispositive motion, then an arbitrator's decision to hold such a hearing would trigger a 30-day clock for issuing his ruling. On the other hand, if the arbitrator decided not to hold a hearing on the motion, then he would be subject to no time limit at all. Samaan's reading of Paragraph 16, in conjunction with Paragraph 5, therefore would create little incentive for an arbitrator to hold a hearing on a dispositive motion.

The uncomfortable fit that results from interpreting Paragraph 16's 30-day limit to apply to hearings on dispositive motions is further underscored by the fact that a ruling on a dispositive motion does not necessarily result in an arbitration award. Paragraph 16 imposes a 30-day clock only on the issuance of "the award." True enough, if the arbitrator decided that there were no genuine disputes of material fact, a dispositive motion could result in an award. On the other hand, if the arbitrator decided that there *was* a genuine dispute of material fact, then his denial of the dispositive motion would not result in an award for either party, and the matter would proceed to a trial-like arbitration hearing as detailed in the Agreement. The absence of an award would correspondingly exempt the arbitrator from the 30-day limit in Paragraph 16.

So, if Samaan's interpretation is correct, an arbitrator deciding a dispositive motion would be subject to the 30-day limit only if he held a hearing on the motion, subsequently

granted the motion, and issued an award. Samaan's interpretation of Paragraph 16 therefore leads to the bizarre result that the applicability of the 30-day limit to dispositive motions would depend on (1) whether the arbitrator decided to hold a motion hearing, and (2) whether he ultimately granted or denied the motion.

Nor does exempting dispositive motions from the 30-day limit reduce the provision to surplusage. *See People v. McGraw*, 771 N.W.2d 655, 659 (Mich. 2009) ("In interpreting a statute, we avoid a construction that would render part of the statute surplusage or nugatory."). Paragraph 16 follows several paragraphs detailing the protocol for an "arbitration hearing," during which both parties would be able to submit evidence, including witnesses who would be subject to cross-examination. The hearing contemplated in Paragraph 16 is the arbitration equivalent of a trial. Thus, the most direct way to impart meaning to the 30-day time limit, while also avoiding the awkwardness of applying it to hearings on dispositive motions, is to cabin its application to a trial-like arbitration hearing. This interpretation avoids rendering the 30-day time limit surplusage, *see McGraw*, 771 N.W.2d at 659, avoids illogical results, *see Kellogg*, 471 F.3d at 636, and offers the best interpretation of Paragraph 16 when the language of the Agreement is considered as a whole, *see Whitehouse Condo. Grp., LLC v. Cincinnati Ins. Co.*, 569 F. App'x 413, 416 (6th Cir. 2014).

In response, Samaan cites *Huntington Alloys, Inc. v. United Steelworkers of America*, 623 F.2d 335 (4th Cir. 1980), a labor-arbitration case involving a contractual deadline for the issuance of an award. But we find his reliance on *Huntington Alloys* unpersuasive. Although the court in that case vacated an arbitration award based on the violation of a provision similar to Paragraph 16, the arbitrators in *Huntington Alloys* actually held a trial-like hearing before issuing the award beyond the specified time limit. *Id.* at 336–38. Further, the collective-bargaining agreement in *Huntington Alloys* provided that the decision of the arbitrators would not be binding unless it was delivered to the parties within the specified time limit, *id.* at 336; here, the Agreement contains no such provision and instead authorizes the arbitrator to unilaterally modify any deadline. These salient differences preclude Samaan from successfully relying on *Huntington Alloys* for the proposition that Paragraph 16 requires that we vacate the award

because of Judge Rashid's failure to render it within 30 days after the hearing on General Dynamics's dispositive motion.

### 2. Judge Rashid's alleged actions and inactions during the arbitration proceedings are not sufficient bases for vacatur under the FAA

Samaan next argues that the award should be vacated under 9 U.S.C. § 10(a)(2)–(4) because Judge Rashid evidenced partiality, committed misconduct by refusing to hear evidence, prejudiced Samaan's rights through his misbehavior, and imperfectly executed his powers in a way that demonstrated the absence of a "mutual, final, and definite award." To support his claims, Samaan points to (1) three sets of remarks that Judge Rashid allegedly made during the hearing on General Dynamics's motion for summary disposition, (2) Judge Rashid's failure to hold an evidentiary hearing, (3) the alleged inclusion of language from General Dynamics's briefs in the written award, and (4) Judge Rashid's alleged failure to address all of Samaan's arguments opposing summary disposition. Although Samaan neither analyzes nor cites any factually similar cases that would support vacatur based on these allegations, we will nevertheless address each of these bases in turn.

The first basis focuses on the comments that Judge Rashid allegedly made at the motion hearing. Samaan contends that Judge Rashid (1) admitted that he had not reviewed Samaan's documents before the hearing, (2) stated that the case was too complicated for him, and (3) discussed his own career woes as a way of urging Samaan to settle. As the party seeking vacatur, Samaan bears the burden of producing evidence to support his claim. *See Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 306 (6th Cir. 2008) (holding that a party asserting evident partiality as a basis for vacatur bears the burden of "establish[ing] specific facts that indicate improper motives on the part of the arbitrator" (citation omitted)); *Jamoua v. CCO Inv. Servs. Corp.*, No. 09-13604, 2010 WL 891148, at *1 (E.D. Mich. Mar. 10, 2010) ("The burden is on the party seeking to vacate the award . . . to come forward with evidence in support of its claim . . . .").

But nothing other than Samaan's unsworn allegations support his characterization of what Judge Rashid said at the motion hearing. Samaan has pointed to no record evidence— whether a transcript, recording, or sworn statement—that lends support to his account, and

General Dynamics contests Samaan's description of what Judge Rashid said. This failure to substantiate his assertions with record evidence is fatal to this set of Samaan's claims. *See Elec. Data Sys. Corp. v. Donelson*, 473 F.3d 684, 692 (6th Cir. 2007) (concluding that, "[b]ecause no record exists of the arbitration hearing held in this case, it is impossible to determine" what was said at the hearing); *Univ. Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331, 1337 (11th Cir. 2002) (noting that, "since the hearings were not transcribed, we cannot even look at questions or offhand remarks by the arbitrators for possible evidence" supporting vacatur of an arbitration award); *Jamoua*, 2010 WL 891148, at *5 ("Where, as here, the party moving to vacate the award provides no transcript or record evidence, but presents only self-serving and conclusory allegations unsupported by any record evidence, it is impossible for this Court to determine that the [arbitration] Panel was guilty of misconduct.").

Samaan also argues that the arbitration award should be vacated because Samaan did not receive an evidentiary hearing in which he could present evidence or call witnesses. As noted above, however, Samaan points to no caselaw (and we are aware of none) holding that an arbitrator's failure to hold an evidentiary hearing merits vacatur under 9 U.S.C. § 10. *See Louisiana D. Brown 1992 Irrevocable Tr. v. Peabody Coal Co.*, 205 F.3d 1340, at *5–6 (6th Cir. 2000) (unpublished table decision) (rejecting a plaintiff's claim that an "absolute right" to an evidentiary hearing exists in arbitration); *Warren v. Tacher*, 114 F. Supp. 2d 600, 602–03 (W.D. Ky. 2000) ("Plaintiffs cite no authority that they are automatically entitled to a full-blown evidentiary hearing following discovery, and the court is aware of none.").

Moreover, with respect to dispositive motions, Paragraph 5 of the Agreement explicitly provides for "a hearing ordered by the Arbitrator . . . as the Arbitrator deems necessary." This permissive language establishes the parties' agreement that Samaan's claims could be resolved based on a dispositive motion without even a motion hearing, let alone an evidentiary hearing. Indeed, given that district courts across the country frequently grant summary judgment against plaintiffs without an evidentiary hearing, based on Rule 56 of the Federal Rules of Civil Procedure, the argument that such a protocol is impermissible when adopted by an arbitrator is unpersuasive—particularly where, as here, the relevant arbitration agreement permits such a

course. Accordingly, the absence of an evidentiary hearing does not merit vacatur of the arbitration award under the FAA.

Samaan further argues that the award should be vacated because the written award "blatantly copied word-for-word language from General Dynamics['s] briefs." The veracity of Samaan's contention is hard to evaluate because he fails to identify what language was in fact copied verbatim. But even assuming that Samaan's assertion is true, he—yet again—cites no caselaw substantiating his position that such behavior indicates bias sufficient to merit vacatur under 9 U.S.C. § 10. Moreover, federal courts are permitted to incorporate language from parties' submissions into their orders. *Kilburn v. United States*, 938 F.2d 666, 672 (6th Cir. 1991) ("While the Supreme Court in *Anderson* [*v. City of Bessemer City*, 470 U.S. 564, 572 (1985),] discouraged verbatim adoption by district courts of a party's proposed findings of fact and conclusions of law, it still held, however, that district court findings are subject to the clearly erroneous standard . . . ."). Samaan offers no rationale for why such behavior is permissible for courts but not for arbitrators. This basis for vacating the award is therefore without merit.

Samaan's last contention regarding this related group of claims is that the arbitration award should be vacated on the basis that Judge Rashid "failed to address several issues Samaan had raised, ignoring questions involving Samaan's indefinite suspension and the derogatory statements that Samaan's supervisor used in his 2010 performance evaluation." A decisionmaker does not necessarily err simply because he or she does not address every argument raised by one of the parties. *United States v. Collazo*, 818 F.3d 247, 260 (6th Cir. 2016) (finding no error in the district court's failure to address a nondispositive issue raised by a party). And to the extent that the issues allegedly ignored were outcome-determinative, Samaan's argument is best characterized as a challenge to Judge Rashid's legal conclusions. But a legal error committed by an arbitrator is insufficient for vacatur under the FAA. *See Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006) ("Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." (brackets, citation, and emphasis omitted)).

Samaan's claim that Judge Rashid ignored certain issues could perhaps be viewed as a claim that he demonstrated "manifest disregard for the law." *See Merrill Lynch, Pierce, Fenner*

*& Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995) ("When faced with questions of law, an arbitration panel does not act in manifest disregard of the law unless (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle."). Although such disregard might still be a permissible basis for vacatur of an arbitration award, *see Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010), we need not address this question because, as noted above, Samaan has not developed such an argument on appeal, s*ee Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013); *Solvay Pharm.*, 442 F.3d at 475 n.3.

### 3. The FAA does not allow for vacatur based on the fulfillment of moral and ethical obligations

Samaan's final argument is that the arbitration award should be vacated because Samaan believed that he was fulfilling his moral and ethical obligations to expose fraud. Tellingly, Samaan again cites no legal authority to support this argument. This omission is unsurprising given that, as noted above, we can vacate an arbitrator's award under the FAA only under the circumstances enumerated in 9 U.S.C. § 10. Whether Samaan believed that he was fulfilling his ethical and moral obligations is therefore legally irrelevant in the present case because the FAA does not recognize such behavior as a basis for vacating an arbitrator's award. *See* 9 U.S.C. § 10(a). We accordingly conclude that Samaan's attempt to vacate the award on this basis fails.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.