**VIC WERTZ DISTRIBUTING COMPANY, Plaintiff–Appellant,**

v.

**TEAMSTERS LOCAL 1038, NATIONAL CONFERENCE OF BREWERY AND SOFT DRINK WORKERS OF THE UNITED STATES OF AMERICA AND CANADA, Defendant–Appellee.**

No. 89–1567.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 6, 1990.

Decided March 22, 1990.

Robert M. Vercruysse (argued), James S. Rosenfeld, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for plaintiff-appellant.

Gerry M. Miller (argued), Previant, Goldberg, Velman, Gratz, Miller & Brueggeman, Milwaukee, Wis., for defendant-appellee.

Before JONES and MILBURN, Circuit Judges, and RUBIN, District Judge *.

MILBURN, Circuit Judge.

Plaintiff-appellant Vic Wertz Distributing Company appeals the district court's summary judgment enforcing an arbitration award for Teamsters Local 1038 and dismissing Wertz's action challenging the arbitration award. For the reasons that follow, we affirm.

I.

On November 1, 1983, Local 1038 entered into a collective bargaining agreement with the Macomb County Beer Distributors, a multi-employer association of which Wertz was a member. The collective bargaining agreement was to expire on May 1, 1987, and in February 1987, Local 1038 entered into negotiations for a successor agreement with the Downriver, Detroit, Oakland, and Macomb Beer Distributors Association ("DDOM"), the successor multi-employer association of which Wertz was a member. The parties were unable to reach a new agreement by May 1, and agreed to continue negotiations and extend the 1983-87 agreement, subject to the right of either party to revoke the extension upon forty-eight hours written notice to the other party. The extended agreement expired on May 29, 1987, after DDOM gave the required notice to Local 1038.

On June 1, 1987, DDOM implemented its final offer, and on June 3, 1987, the membership of Local 1038 rejected the final offer. On June 5, 1987, DDOM members began a lockout of their employees, which continued until August 17, 1987, when a new collective bargaining agreement was ratified.

Under the 1983-87 agreement, employees with twenty-three years of credited service were entitled to seven weeks paid vacation.[1] On October 17, 1987, Wertz gave written notice to two of its employees, Bernard Thomas and Charles Darling, that they would receive only six weeks paid vacation under the new agreement. On October 20 and 21, 1987, Thomas and Darling filed grievances claiming that they were entitled to the seventh week of paid vacation because they arrived at their twenty-third anniversary dates in June 1987, prior to the effective date of the new agreement.

---

* Honorable Carl B. Rubin, United States District Judge for the Southern District of Ohio, sitting by designation. Judge Rubin's term as Chief District Judge ended March 15, 1990.

1. Article 8 of the 1983-87 collective bargaining agreement provides in relevant part:

8.1(a) Employees of the Delivery and Non Delivery divisions of the Delivery Department covered by this Agreement shall receive paid vacations to the extent earned, as follows:

| Years of Credited Service | Length of Paid Vacation Granted if Fully Earned |
|---|---|
| One | One Week |
| Two | Two Weeks |
| Five | Three Weeks |
| Eight | Four Weeks |
| Twelve | Five Weeks |
| Nineteen | Six Weeks |
| Twenty-Three | Seven Weeks |
| * * * | * * * |

8.3 An employee shall be entitled to his full vacation in accordance with the above schedule for each vacation year in which he earns twelve (12) months of credits for vacation pay.

\* \* \* \* \* \*

8.6 An employee's vacation year shall begin on the anniversary of the date on which his seniority begins.

**8.7 Years of Credited Service for Vacation Purposes.** An employee shall be credited with one year of service for vacation purposes at the end of his vacation year in which he completes one hundred and thirty (130) straight time days (Monday through Friday) of work from his seniority date as shown by the employer's records.

8.8 Subsequently, an employee shall earn credit for a year of service for vacation purposes for each of his vacation years in which he works forty-two (42) or more straight time days (Monday through Friday). No credit shall be earned for any vacation year in which less than forty-two (42) straight time days (Monday through Friday) are worked.

On July 7, 1988, a hearing on the grievances was held before an arbitrator. The parties presented evidence and testimony on the issue of arbitrability and on the merits of the grievances. Local 1038 argued that both grievants became eligible for a seventh week of paid vacation prior to expiration of the 1983–87 agreement by satisfying Section 8.8 of the agreement, which requires an employee to work forty-two or more days to "earn credit for a year of service for vacation purposes." Wertz argued that the grievances were not arbitrable because the 1983–87 agreement had expired and because the grievances were not timely filed. Furthermore, Wertz asserted that even if the grievances were arbitrable, the 1983–87 agreement expired prior to the grievants' attaining vested rights in a seventh week of paid vacation.

On October 10, 1988, the arbitrator issued his opinion and award, finding that the grievances were arbitrable, and that Thomas and Darling were entitled to the seventh week of paid vacation. The arbitrator concluded that the broad grievance and arbitration language of the 1983–87 agreement made the grievances arbitrable. The arbitrator also found that the grievances were timely filed because the event which created the claimed grievances occurred on October 17, 1987, when Wertz notified the grievants that they would not be entitled to the seventh week of paid vacation, and the grievances were filed within seven days "of the event which created the claimed grievance," as required by Section 17.2 of the agreement.[2]

Regarding entitlement to the seventh week of vacation, the arbitrator observed "that little more than the work requirement for vacation credit is clearly set forth as a vacation eligibility requirement." Arbitrator's Opinion and Award at 18. However, the arbitrator also noted "that length of paid vacation is stated on the basis of years of credited service." *Id.* The arbitrator concluded "that Section 8.1(a) is am-

biguous as to the point where years of credited service and length of paid vacation intersect." *Id.* Relying on the contract construction principle that forfeitures should be avoided where possible, the arbitrator determined that the grievants were entitled to the seventh week of paid vacation in 1987. *Id.* at 19–20.

Wertz filed the present action on November 15, 1988, seeking to vacate the arbitrator's award, alleging that the arbitrator exceeded his authority by finding the grievances arbitrable and that the award disregarded the express language of the collective bargaining agreement. On December 8, 1988, Local 1038 filed its answer and a counterclaim for enforcement of the arbitration award. On January 17, 1989, Wertz moved for summary judgment, and on February 21, 1989, Local 1038 filed a cross-motion for summary judgment and a request for sanctions pursuant to Federal Rule of Civil Procedure 11. On April 20, 1989, after hearing oral argument, the district judge rendered a decision from the bench denying Wertz's motion for summary judgment and granting Local 1038's cross-motion for enforcement of the award, but he did not address the request for Rule 11 sanctions. A judgment was entered on May 5, 1989, dismissing Wertz's action and granting Local 1038's counterclaim for enforcement of the award. This timely appeal followed, and Local 1038 has filed a motion for double costs and sanctions pursuant to Federal Rule of Appellate Procedure 38.

The principal issues on appeal are (1) whether the grievances are arbitrable, (2) whether the arbitration award draws its essence from the collective bargaining agreement, and (3) whether double costs and sanctions pursuant to Rule 38 should be imposed.

## II.

Summary judgment is appropriate where "there is no genuine issue as to any materi-

---

**2.** Section 17.2 provides:

The grievance shall be presented to his supervisor within seven (7) calendar days of the event which created the claimed grievance, except that any disciplinary action, including

discharge, shall be deemed final unless a written grievance is presented to the employer or his authorized representative within three (3) working days from the time notice of such disciplinary action is given.

al fact ... and the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56. We review a grant of summary judgment de novo, *Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988), viewing all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Because the facts in this case are undisputed, one of the parties is entitled to judgment as a matter of law. *Eberhard Foods, Inc. v. Handy*, 868 F.2d 890, 891 (6th Cir.1989).

### A.

The first issue we must address is what standard of review applies to an arbitrator's decision on arbitrability. The Supreme Court has held that

[t]he question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.

*AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). However, in the present case, the arbitrator has already rendered an opinion on the issue of arbitrability, and in *Knollwood Cemetery v. United Steelworkers*, 789 F.2d 367, 369 (6th Cir.1986) (per curiam), we held that an arbitrator's decision on the issue of arbitrability was not subject to independent judicial review.

In *Knollwood*, the parties entered into an agreement to arbitrate, and we rejected the appellant's argument for an independent ruling on the arbitrability issue, holding that "the scope of the arbitrator's authority is itself a question of contract inter-

pretation that the parties have delegated to the arbitrator." *Id.* (quoting *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 765, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983)). We added that "the presumption of authority that attaches to an arbitrator's award applies with equal force to his decision that his award is within the submission." *Id.* (quoting *Johnston Boiler Co. v. Local Lodge No. 893*, 753 F.2d 40, 43 (6th Cir. 1985)). Because *Knollwood* was decided prior to the Supreme Court's ruling in *AT & T Technologies*, we must determine if *Knollwood* remains good precedent.

The ruling in *AT & T Technologies* that the issue of arbitrability is one for the courts and not the arbitrator merely restated a principle set forth by the Supreme Court in the *Steelworkers Trilogy*.[3] Thus, the principle of judicial determination of arbitrability was well established prior to our decision in *Knollwood. See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962), *overruled in part on other grounds, Boys Markets, Inc. v. Retail Clerk's Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In another case decided prior to *AT & T Technologies*, the Ninth Circuit noted the settled principle that courts usually decide the issue of arbitrability, yet it rendered a decision consistent with our ruling in *Knollwood. See George Day Const. Co. v. United Bhd. of Carpenters*, 722 F.2d 1471, 1474–76 (9th Cir.1984).

In *George Day*, the parties addressed both the question of arbitrability and the merits of the dispute during the arbitration proceeding, and they submitted the entire controversy to the arbitrator for decision. *Id.* at 1475. The court concluded that the employer impliedly consented to the arbitrator's deciding the question of arbitrability, and the court held that the arbitrator's

---

3. *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960);

and *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

decision on arbitrability was subject only to the deferential standard of review applied when reviewing the merits of an arbitration award. *Id.* at 1476. The ruling in *George Day* has been reaffirmed subsequent to the Supreme Court's decision in *AT & T Technologies. See Brotherhood of Teamsters Local No. 70 v. Interstate Distrib. Co.,* 832 F.2d 507, 510 (9th Cir.1987).

In *Local No. 70,* the court observed that "[u]nder *AT & T Technologies,* the parties to a collective bargaining agreement are free to provide that an arbitrator shall decide the question whether they agreed to arbitrate a dispute...." *Id.* The court concluded that its decision in *George Day* was consistent with the ruling in *AT & T Technologies* because "where the parties 'clearly and unmistakably provide otherwise,' the general rule that courts must decide the question [of arbitrability] does not apply." *Id.* Moreover, in another case decided after *AT & T Technologies,* the Third Circuit rendered a decision consistent with the rulings in *Knollwood* and *George Day.* In *Pennsylvania Power Co. v. Local Union No. 272,* 886 F.2d 46, 48 (3d Cir. 1989), the parties submitted to arbitration both the issue of arbitrability and the merits of the grievance, and the court held:

> In considering the propriety of the arbitrator's decision on arbitrability ... our review is subject to the same highly deferential standard we employ in reviewing arbitrators' rulings on the merits. We will not vacate an arbitrator's arbitrability decision unless it cannot rationally be derived from the collective bargaining agreement.

*Id.*

*Knollwood, George Day,* and *Pennsylvania Power* are distinguishable from the typical case in which the issue of arbitrability arises because in these cases the parties submitted the issue of arbitrability to the arbitrator rather than reserving the question for initial determination by the court. The issue of arbitrability is typically raised initially in the district court by an action to compel or enjoin arbitration. *George Day,*

722 F.2d at 1476. "The question of arbitrability 'is for the courts to decide,' only because it is necessary for the courts to decide, when a party resists arbitration, whether the parties have agreed to submit the contested issue to an arbitrator for decision; this determination logically precedes the arbitration itself." *United Steelworkers v. Timken Co.,* 717 F.2d 1008, 1012 (6th Cir.1983).

■ In the present case, the parties submitted the issue of arbitrability to the arbitrator rather than reserving the question for initial determination by the court. Agreement to have the arbitrator decide the issue of arbitrability "may be implied from the conduct of the parties in the arbitration setting." *George Day,* 722 F.2d at 1475. Because the parties "clearly and unmistakably" submitted the issue of arbitrability to the arbitrator without reservation, we will review the arbitrator's decision on arbitrability under the same deferential standard employed when reviewing an arbitrator's ruling on the merits. Therefore, the arbitrator's decision on arbitrability will be affirmed "unless it fails to 'draw its essence from the collective bargaining agreement.'" *Eberhard Foods, Inc. v. Handy,* 868 F.2d 890, 891 (6th Cir.1989).

■ The arbitrator's decision on arbitrability draws its essence from the collective bargaining agreement. The arbitrator first noted the Supreme Court's holding in *Nolde Bros., Inc. v. Local 358, Bakery & Confectionary Workers Union,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), that the obligation to arbitrate can survive the termination of a collective bargaining agreement and that a presumption of arbitrability applies unless negated expressly or by clear implication by the terms of the contract. The agreement in *Nolde* provided that "'any grievance' arising between the parties was subject to binding arbitration." *Id.* at 245, 97 S.Ct. at 1068. The arbitrator compared the provision in *Nolde* with the language in section 18.1 of the 1983–87 agreement and concluded the arbi-

tration provisions were sufficiently similar to make the holding in *Nolde* applicable. Section 18.1 makes "[a]ll differences or misunderstandings" subject to grievance procedures and arbitration.[4] Thus, the arbitrator concluded "it can fairly be said that the parties adopted broad grievance and arbitration language with the understanding that the effect would be to allow the assertion of claims based on substantive rights in the contract, even though the claim might be asserted following contract expiration." Arbitrator's Opinion and Award at 14.

The arbitrator also addressed Wertz's challenge to the timeliness of the grievances, and he concluded that the grievants complied with the contract by filing the grievances within seven days of the event which created the claimed grievance; *i.e.,* notification by Wertz on October 17, 1987, that Thomas and Darling would not receive a seventh week of paid vacation. The arbitrator's decision clearly resulted from his construction and interpretation of the collective bargaining agreement. "The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* Because the arbitrator was at least "arguably construing" the contract, his decision on arbitrability does draw its essence from the collective bargaining agreement, and we agree with his decision.

**B.**

■ Wertz next challenges the arbitrator's award, arguing that it fails to draw its essence from the collective bargaining agreement. "The standard of review in arbitration cases is narrow." *Eberhard Foods,* 868 F.2d at 891. "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Misco,* 108 S.Ct. at 370 (quoting *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Id.*

In support of his challenge to the arbitrator's award, Wertz cites *Cement Divisions, National Gypsum Co. v. United Steelworkers,* 793 F.2d 759, 766 (6th Cir.1986), in which we held:

> An award fails to derive its essence from the agreement when (1) an award conflicts with express terms of the collective bargaining agreement; (2) an award imposes additional requirements that are not expressly provided in the agreement; (3) an award is without rational support or cannot be rationally derived from the terms of the agreement; and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement.

*Id.* (citations omitted). Wertz argues that the arbitrator's award fails to derive its essence from the agreement in all four ways identified in *National Gypsum.*

Wertz asserts that the award conflicts with express terms of the agreement, and that the arbitrator completely disregarded unambiguous language in the agreement which mandated a contrary result. Wertz

---

**4.** Section 18.1 provides:

All differences or misunderstandings which may arise shall be settled between the employer and the local union by regular grievance procedure, and if no adjustment satisfactory to both parties can be reached in this way, then the matter shall be settled by a Board of Arbitration constituted as hereinafter provided.

When mutually agreed upon, disagreements over contract interpretation may be submitted to arbitration. A grievance by the union will not be required.

contends that while an arbitrator "may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." *Detroit Coil v. International Ass'n of Machinists & Aerospace Workers*, 594 F.2d 575, 579 (6th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). Wertz argues that the arbitrator created an ambiguity where none existed and disregarded unambiguous language in Article 8 of the agreement which would have resolved the manufactured ambiguity. *See Morgan Serv., Inc. v. Local 323, Chicago & Cent. States Joint Bd.*, 724 F.2d 1217 (6th Cir.1984); *Grand Rapids Die Casting Corp. v. Local Union No. 159, UAW*, 684 F.2d 413 (6th Cir.1982); *Timken Co. v. Local Union No. 1123, United Steelworkers*, 482 F.2d 1012 (6th Cir.1973).

Specifically, Wertz maintains that the arbitrator ignored Sections 8.3, 8.6, 8.7 and 8.8.[5] Wertz argues that these sections unambiguously establish that entitlement to a seventh week of paid vacation is conditioned upon reaching the end of the vacation year; *i.e.*, the twenty-third anniversary date. Wertz notes that the term "vacation year" appears in several subsections of Article 8, further establishing that reaching the end of the vacation year is a condition precedent to determination of credited service for vacation benefits. Because neither grievant reached his twenty-third anniversary date prior to expiration of the 1983–87 agreement, Wertz argues that the condition precedent to eligibility was not satisfied and the grievants have no vested interest in a seventh week of vacation benefits.

Wertz also argues that the award fails to draw its essence from the agreement because it is based on general considerations of fairness and equity rather than on the precise terms of the agreement. Wertz cites *Local 342, UAW v. T.R.W., Inc.*, 402 F.2d 727 (6th Cir.1968), *cert. denied*, 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223 (1969), in which we vacated an award because the arbitrator imposed a procedural

requirement, on grounds of fundamental fairness, which was not contained in the agreement. Wertz asserts that the arbitrator's decision in this case was based upon policies and prejudices external to the contract, as evidenced by the final sentence of the arbitrator's opinion, in which he stated, "It appears clear that in the case at bar, denial of these grievances would work a greater hardship on the two involved employees, than would the granting of the grievances burden the Company." Arbitrator's Opinion and Award at 19.

The arbitrator's discussion of the merits focused primarily on only three provisions of Article 8. The arbitrator identified section 8.1(a) and section 8.6 as relevant provisions for consideration, and he also discussed the forty-two day work requirement for vacation credit found in section 8.8. The arbitrator observed "that little more than the work requirement for vacation credit is clearly set forth as a vacation eligibility requirement." Arbitrator's Opinion and Award at 18. The arbitrator also noted that "length of paid vacation is stated on the basis of years of credited service." *Id.* He then concluded "that Section 8.1(a) is ambiguous as to the point where years of credited service and length of paid vacation intersect." *Id.*

Although the arbitrator did not identify and discuss each provision in Article 8, it does not appear that he disregarded plain and unambiguous provisions which would mandate a contrary result. The cases cited by Wertz in which an arbitrator's award was vacated because he disregarded clear and unambiguous language are distinguishable because the provisions identified by Wertz are not so clear and unambiguous. *See Grand Rapids*, 684 F.2d at 415–16 (arbitrator's decision vacated where it was based upon his disapproval of the disciplinary procedures in the collective bargaining agreement). No provision of Article 8 clearly requires an employee to reach his twenty-third anniversary date prior to having vested rights in a seventh week of paid

---

**5.** See footnote 1 for the text of these sections.

vacation. Wertz's argument for consideration of other subsections in Article 8 amounts to a request for reinterpretation of the agreement, which we cannot do. *Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362. Although we might reach a different result were we to interpret the agreement, the arbitrator's opinion reveals he was "arguably construing" the agreement. *See Misco*, 108 S.Ct. at 371.

The final sentence of the arbitrator's opinion could give the impression that the "award is based on general considerations of fairness and equity instead of the precise terms of the agreement." *National Gypsum*, 793 F.2d at 766. However, when the arbitrator's opinion on the merits is viewed in its entirety, this case is distinguishable from the award vacated in *Local 342*. In the present case, unlike *Local 342*, the arbitrator did not ignore plain language in the agreement, nor did he impose additional requirements not contained in the agreement. *See Local 120 v. Brooks Foundry, Inc.*, 892 F.2d 1283, 1288 (6th Cir.1990). Rather, the arbitrator confronted two persuasive interpretations of the agreement, and he applied a rule of contract construction to conclude that the employees were entitled to the seventh week of vacation.

Wertz argues that application of this contract construction principle was erroneous because the employees had no vested rights to forfeit. However, the ultimate issue before the arbitrator was whether the vacation benefit vested under the 1983–87 agreement. The arbitrator noted Wertz's position that a seventh week of vacation benefits vested only if the employees met the precondition of their twenty-third anniversary dates prior to expiration of the 1983–87 agreement. However, the arbitrator concluded that only the forty-two day work requirement of Section 8.8 was "clearly set forth as a vacation eligibility requirement." Arbitrator's Opinion and Award at 18. Thus, the arbitrator apparently concluded that the seventh week of vacation benefits vested upon satisfaction of Section 8.8, and he rejected Wertz's argument for an additional precondition by applying the contract construction principle that forfeitures should be avoided.

Although the arbitrator's opinion is somewhat ambiguous, that is no basis for vacating the award. "The Supreme Court has made it clear ... that reviewing courts are not to vacate awards merely because an arbitrator's reasoning could be interpreted in several ways, one of which would lead to the conclusion that the award does not draw its essence from the contract." *Industrial Mut. Ass'n v. Amalgamated Workers, Local 383*, 725 F.2d 406, 410 (6th Cir.1984). In *Enterprise Wheel*, the Supreme Court held, "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. at 1361. Thus, the final sentence of the arbitrator's opinion does not establish that the arbitrator dispensed his own brand of industrial justice. The opinion, read in its entirety, reveals an award which draws its essence from the agreement.

## C.

■ Local 1038 has filed a motion for double costs and sanctions pursuant to Federal Rule of Appellate Procedure 38, which provides, "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." We have held that an appeal is frivolous "if it is obviously without merit and is prosecuted for delay, harassment, or other improper purposes." *Dallo v. INS*, 765 F.2d 581, 589 (6th Cir.1985).

Local 1038's motion for sanctions and double costs asserts that Wertz's appeal is without justification under established law. Local 1038 argues that the appeal is frivolous in part because the Supreme Court has impressed "upon potential litigants the fact that barring exceptional circumstanc-

es, one *cannot* prevail in an action to vacate an arbitration award." Appellee's Brief at 33 (emphasis in original). Local 1038 contends that the Supreme Court's decision in *Misco* is directly dispositive of Wertz's arguments on appeal and that Wertz's failure to cite *Misco* demonstrates that the appeal is frivolous. Local 1038 primarily relies upon *Hill v. Norfolk & Western R.R.*, 814 F.2d 1192, 1200, 1203 (7th Cir.1987), in which the court, on its own initiative, imposed sanctions under Rule 38 in an action challenging an arbitration board's decision. In *Hill*, the appellant misrepresented the standard of judicial review of arbitration decisions, and the court imposed sanctions for the frivolous appeal despite the presence of one claim with "at least colorable merit." *Id.* at 1200.

This case is not one appropriate for imposition of Rule 38 sanctions. Wertz has acknowledged the limited scope of judicial review of arbitration decisions, and it has presented its argument for vacating the award within the narrow scope of review. Wertz's failure to cite *Misco* does not make this appeal frivolous because *Misco* is not directly dispositive of the issues presented on appeal. Because this appeal has legal basis and is not "obviously without merit," Local 1038's motion for sanctions is denied.

### III.

Accordingly, for the foregoing reasons, the district court's award of summary judgment is AFFIRMED.