NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0429n.06

No. 24-3180

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ANDREA K. DRAKE and WILLIAM S. DRAKE,

    Plaintiffs-Appellants,

v.

DEPUY ORTHOPAEDICS, INC., et al.,

    Defendants,

STEVEN M. JOHNSON, dba THE JOHNSON LAW FIRM,

    Interested Party-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Oct 28, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: MOORE, THAPAR, and DAVIS, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** The tortured history of this ten-year old contingency-fee dispute between an attorney—Steven M. Johnson—and his former client—William S. Drake—dwarfs that of the underlying products-liability claim. After we reversed the district court's decision to vacate an arbitration award in Johnson's favor and remanded to the district court, Drake for the first time raised the argument that he had never agreed to arbitrate the issue of arbitrability, that he was entitled to a judicial determination of arbitrability, and that in deciding the issue of arbitrability anyway, the arbitrator exceeded his authority and rendered the award invalid. The district court denied Drake's bid to vacate the arbitration award. Because, under our law, Drake clearly and unmistakably submitted the issue of arbitrability to the arbitrator

without reservation, we hold that he waived his right to a judicial determination of arbitrability and **AFFIRM** the district court's judgment confirming the arbitration award.

## I. BACKGROUND

This case has a long and winding history that has brought it to this court twice before. We have thoroughly summarized its procedural and factual history in our two prior decisions. *See Drake v. DePuy Orthopaedics, Inc.*, 757 F. App'x 449 (6th Cir. 2018); *In re DePuy Orthopaedics, Inc. ASR Hip Implant Prods. Liab. Litig.*, 838 F. App'x 922 (6th Cir. 2020). We recount that history again here only as relevant to the issues presented in the instant appeal.

Johnson and Drake have been embroiled in a contingency-fee dispute for ten years. Drake hired Johnson to represent him in a potential class action against the manufacturer of Drake's defective hip implant, DePuy Orthopaedics ("DePuy"). R. 10-4 (Att'y Rep. Agreement) (Page ID #267). In the Attorney Representation Agreement ("ARA") the parties executed at the initiation of their relationship, Drake agreed to give Johnson a 40% contingency fee on any recovery and agreed to arbitrate "any dispute arising from the interpretation, performance, or breach" of the ARA. *Id.*

After about a year, Drake's wife, Andrea K. Drake, informed Johnson's law firm on November 28, 2012 that the Drakes were considering hiring alternate counsel. R. 7-10 (Johnson Firm Call Logs at 11) (Page ID #141). On November 29, Drake signed a form substituting a local Minnesota lawyer as his attorney in the products liability action, effectively terminating Johnson. R. 10-3 (Corrected Final Award at 7, 11) (Page ID #253, 257). Yet on November 30, Johnson filed a "short form complaint" on Drake's behalf in the products-liability action. R. 7-11 (Short Form Compl. at 6) (Page ID #177). Ultimately, a third law firm represented Drake for purposes

of the ensuing Multi-District Litigation ("MDL") against the manufacturer of Drake's hip implant and the resulting Master Settlement Agreement ("MSA"). R. 10-3 (Corrected Final Award at 3–4, 7–8) (Page ID #249–50, 253–54); R. 10-8, 10-9 (MSA and Drake Release) (Page ID #273–98).

When the Drakes[1] reached a settlement with DePuy, Johnson initiated an arbitration with Judicial Arbitration and Mediation Services ("JAMS") in Dallas, Texas to recover what he believed to be his contingency fee. R. 10-3 (Corrected Final Award at 4) (Page ID #250). Despite Drake's efforts, some of which are described below, the arbitration proceeded and the arbitrator sided with Johnson, awarding him his contingency fee, contractual attorneys' fees, and costs for a total of $353,214.97, amounting to 62.88% of Drake's $561,750 settlement award. *Id.* at 14, 17–18 (Page ID #260, 263–64).

Drake filed a motion on the MDL docket in the Northern District of Ohio to vacate the arbitration award (No. 1:13-dp-20140, hereinafter the "Drake Action"). A few days later Johnson filed an action against Drake alone in the Northern District of Texas seeking to confirm the arbitration award (No. 1:17-dp-20085, hereinafter the "Johnson Action"). The Johnson Action was eventually transferred to the Northern District of Ohio and assigned to the district judge

---

[1]Throughout this case's extensive record and before us now, Drake and his wife Andrea are sometimes listed jointly as parties. Andrea brought a loss of consortium claim as a plaintiff in Drake's MDL complaint, R. 1 (Compl. at 23–24) (Page ID #23–24), and is a "spouse/derivative claimant" for purposes of the MSA, R. 10-9 (Drake Release at 12) (Page ID #292). But William Drake alone executed the ARA, R. 10-4 (Att'y Rep. Agreement) (Page ID #267), and the arbitration award was issued against him as the sole defendant, R. 10-3 (Corrected Final Award) (Page ID #247–66). When Johnson filed a complaint in federal court seeking to confirm the arbitration award, he did so against William Drake as the sole defendant. Compl., *Johnson v. Drake*, No. 3:16-cv-01993 (N.D. Tex. Jul. 7, 2016), ECF No. 1. Although Andrea is listed as a plaintiff-appellant in our case because she was at one point a plaintiff in the MDL, there is no indication that the ARA or any other document makes her liable for Johnson's contingency fee. The instant dispute is thus between Johnson and William Drake. For this reason, we refer to Drake alone as the plaintiff-appellant herein (even when his filings are styled otherwise), except when discussing the Drakes' joint settlement with DePuy or quoting another court's language.

3

overseeing Drake's competing motion to vacate, but the two cases were never consolidated. Johnson Action R. 51 (Transfer Order at 4–5) (Page ID #2587–88).

Drake put forth many arguments in support of vacatur and against confirmation of the arbitration award before both district courts. Chief among them was his contention that the arbitration was invalid because it should not have been conducted in Dallas before a JAMS arbitrator but should have instead been conducted pursuant to the procedures and rules provided by the MSA. Johnson Action R. 9 (Mem. in Supp. of Mot. to Dismiss or Transfer at 19–22) (Page ID #138–41) ("The [ARA] states that the matter will be heard by an 'arbitrator that [Johnson] may **choose** . . .' [Johnson] chose [the] arbitrator (an MDL special master) when [he] filed Mr. Drake's case in the MDL, sought recovery money Mr. Drake received by virtue of the MSA, participated in the MSA and submitted to the Jurisdiction of the MDL's Special Masters and arbitrators." (emphasis in original)). In 2021, we held that Johnson was not bound to arbitrate under the terms of the MSA and that the ARA's arbitration provisions controlled. *DePuy Orthopaedics*, 838 F. App'x at 930 ("[T]he MSA does not establish that Johnson and Drake amended their prior agreement to arbitrate any fee disputes under the ARA. Nor have the Drakes identified any other contractual basis that would bind Johnson to arbitrate his contingent fee claims under the MSA.").

On remand to the district court and before us now, Drake argues that the arbitration was invalid for a different reason—he argues that he did not agree to delegate to the arbitrator the authority to decide whether the dispute was in fact arbitrable and that, in so deciding, the arbitrator exceeded his authority and thus rendered the arbitration award invalid. Appellant Br. at 6–7.

## II. ANALYSIS

### A.  Jurisdiction

This case is before us on appeal from the district court's order granting Johnson's application to confirm an arbitration award in his favor and denying Drake's motion to vacate the same.  Drake Action R. 58 (Notice of Appeal) (Page ID #1495); R. 57 (Order) (Page ID #1492–94).

Title 28 U.S.C. § 1291 endows us with jurisdiction to hear appeals from final district-court decisions like the one here, but the FAA grants even broader appellate jurisdiction.  9 U.S.C. § 16(a)(1)(D), (E) ("An appeal may be taken from . . . an order . . . confirming or denying confirmation of an award . . . or vacating an award."); *see Dealer Comp. Servs., Inc. v. Dub Herring Ford*, 623 F.3d 348, 350–51 (6th Cir. 2010) (observing that § 16(a)(1)(D) makes even a nonfinal order denying confirmation of an arbitration award immediately appealable); *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 377 (6th Cir. 2008) ("Congress has empowered the courts of appeals to entertain a variety of appeals from interlocutory and final district-court arbitration decisions, including 'an appeal from an order confirming an award.'  9 U.S.C. § 16(a)(1)(D).  This appeal falls within this grant of appellate authority." (alterations omitted)).

Johnson argues that we lack jurisdiction to hear Drake's appeal because Drake appealed only from the district court's decision in the Drake Action and not from the corresponding decision in the Johnson Action.  Appellee Br. at 10–12.  Johnson argues that "Drake's failure to appeal from the judgment in [the Johnson Action] means that a ruling in his favor in this appeal from the judgment in [the Drake Action] would not affect the legal interests of the parties and would fail to

grant him effective relief . . . [because] even if the Court ruled in Drake's favor in the appeal from the judgment in [the Drake Action] and determined that the arbitration award should not have been confirmed, the award would nevertheless *remain confirmed* as a result of the unappealed judgment in [the Johnson Action]." *Id.* at 11–12 (emphasis in original).

The only authority Johnson cites in support of this proposition touches generally on mootness and does not shed light on the instant situation. *Id.* at 11 (citing *Taleb v. Miller, Canfield, Paddock & Stone, PLC* (*In re Kramer*), 71 F.4th 428, 438 (6th Cir. 2023); *Church of Scientology of Cal.v. United States*, 506 U.S. 9, 12 (1992)). After our most recent remand, where we held that that the arbitration provisions of the ARA (and not the MSA) governed, Johnson filed his renewed application to confirm the arbitration award in the Drake Action but *not* in the unappealed Johnson Action. Drake Action R. 51 (Page ID #1174). The district court entered an order granting Johnson's motion to confirm the arbitration award in the Drake Action on February 6, 2024, *id.* R. 57 (Page ID #1492–94), and Drake filed his notice of appeal on February 27, *id.* R. 58 (Page ID #1495). It was not until April 15 that Johnson filed a letter in the unappealed Johnson Action requesting that the district court enter an order and judgment on that docket as well. Johnson Action R. 63 (Page ID #2813). Johnson's most recent motion to confirm the arbitration award was not then pending in the Johnson Action because it was filed only on the Drake Action docket. Drake Action R. 51 (Page ID #1174). Nonetheless, the district court issued an order in the unappealed Johnson Action that explicitly cross-referenced its order in the Drake Action, writing, "[f]or the reasons stated in my February 6, 2024 order in *Drake v. DePuy Orthopaedics, Inc.*, Case No. 1:13-dp-20140, I hereby order that the arbitration award is confirmed and enter judgment in favor of [Johnson]." Johnson Action R. 64 (Page ID #2815). The district court entered identical

6

judgments in both actions on April 22, 2024, Drake Action R. 59 (Page ID #1496); Johnson Action R. 65 (Page ID #2816), followed on April 24, 2024 by identical amended judgments in both actions. Drake Action R. 60 (Page ID #1497); Johnson Action R. 66 (Page ID #2817).

It may technically be the case that, were we to grant Drake the relief he seeks, a judgment confirming the arbitration award would still be pending in the Johnson Action. But it is not the case, as Johnson suggests, that such relief would not affect the legal interests of the parties. Instead, any decision from this court reversing the district court's judgment in the Drake Action would also provide grounds for relief from judgment in the Johnson Action under Federal Rule of Civil Procedure 60(b). Fed. R. Civ. P. 60(b)(5), (6) ("On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding" if "the judgment has been satisfied, released, or discharged; *it is based on an earlier judgment that has been reversed or vacated . . . or . . .* [for] any other reason that justifies relief." (emphasis added)). The technicality of an unappealed judgment in the Johnson Action thus does not deprive us of jurisdiction, particularly where that judgment was explicitly "based on" the appealed judgment.

Johnson also argues that we lack jurisdiction to hear Drake's appeal because Drake "appealed only from the district court's original judgment [in the Drake Action], not its amended judgment"[2] and "[a]n 'amended judgment supersedes the original judgment,' leaving the former with no effect." Appellee Br. at 12 (quoting *United States v. Ryan*, 806 F.3d 691, 692 (2d Cir. 2015)).

---

[2]Drake appealed from the district court's February 6, 2024 order, not from either judgment. Drake Action R. 58 (Notice of Appeal) (Page ID #1495).

First, we observe that the amended judgment entry made no substantive changes to the initial judgment entry and we instead understand it as incorporating the terms of the arbitration award into the district court's judgment, though the same was already implied by the initial judgment.[3]  Second, it is well established that a "premature notice of appeal relates forward to the date of eventual entry of judgment such that it [is] timely filed" and "'vest[s] this court with jurisdiction when the judgment becomes final prior to disposition of the appeal.'"  *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 611 (6th Cir. 2024) (quoting *Allen v. NCL Am. LLC*, 741 F. App'x 292, 295 (6th Cir. 2018)); *see also Bonner v. Perry*, 564 F.3d 424, 429 (6th Cir. 2009). The Federal Rules of Appellate Procedure provide similar assurances.  *See* Fed. R. App. P. 4(a)(2) (in a civil case, "[a] notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry."); *FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*, 498 U.S. 269, 273 (1991) (Fed. R. App. P. 4(a)(2) "recognizes that, unlike a tardy notice of appeal, certain premature notices do not prejudice the appellee and that the technical defect of prematurity therefore should not be allowed to extinguish an otherwise proper appeal").  There is, therefore, no basis for Johnson's assertion that Drake's early appeal of the district court's order confirming the arbitration award robs this court of jurisdiction.  The

---

[3]*Compare* Drake Action R. 59 (Judgment) (Page ID #1496) ("For the reasons stated in the Order filed on February 6, 2024, I deny Plaintiffs' motion to vacate, order that the arbitration order be confirmed, and enter judgment in favor of Claimant Steven Johnson."), *with id.* R. 60 (Amended Judgment) ("Having entered an order confirming the Corrected Final Award (see Case No. 1:17-dp-20085, Doc. No. 47 at 31–50 (JAMS Arbitration Reference No. 1310021509)) and having directed entry of judgment in accordance with that Award, I hereby enter judgment in favor of Claimant Steven M. Johnson and against William Drake, awarding all relief provided for in the Corrected Final Award, including recovery by Johnson from Drake in the total amount of $353,214.97, plus an additional 35% of Drake's discretionary loss of earnings award (EIF Claim No. 3585).").

authorities Johnson cites, two criminal cases—one of which is out-of-circuit and the other of which is unpublished—do not save his argument. *See* Appellee Br. at 12.

## B. Standard of Review

"When reviewing a district court's decision either vacating or confirming an arbitrator's award under the FAA, we apply the clear-error standard to the court's finding of fact, but we review questions of law de novo." *McGee v. Armstrong*, 941 F.3d 859, 867 (6th Cir. 2019) (quoting *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 599 (6th Cir. 2016)).

We have held that "[r]eview of an arbitration award 'is one of the narrowest standards of judicial review in all of American Jurisprudence.'" *Id.* (quoting *Way Bakery v. Truck Drivers Loc. No. 164*, 363 F.3d 590, 593 (6th Cir. 2004)). Where an arbitrator is found to have acted within their authority, the award should be upheld "[a]s long as the arbitrator's award draws its essence from the [agreement], and is not merely [the arbitrator's] own brand of industrial justice." *Vic Wertz Distrib. Co. v. Teamsters Loc. 1038*, *Nat'l Conf. of Brewery & Soft Drink Workers*, 898 F.2d 1136, 1141 (6th Cir. 1990) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

## C. The Arbitration Award

Drake argues that the district court erred in confirming the arbitration award because the arbitrator lacked the authority to decide issues of arbitrability and exceeded his authority by doing so. Appellant Br. at 7–20. Johnson responds that, although "the arbitration record was 'replete with Drake's assertions that the MDL [was] the proper forum for resolution of any fee dispute,'" Appellee Br. at 17 (quoting Drake Action R. 30 (Op. and Order at 13) (Page ID #706)), "that

assertion has nothing to do with the arbitrability issue Drake raises in this appeal—whether the fee dispute fell within the matters that the parties agreed to arbitrate under the ARA," *id.*

Drake and Johnson confuse matters here. As in the Supreme Court's seminal *First Options* decision, multiple types of disagreements may arise during the course of disputes about arbitration. Most relevant for our purposes, one concerns a dispute of contract law where "the parties . . . disagree about whether they agreed to arbitrate the merits. That disagreement is about the *arbitrability* of the dispute." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). A second type of dispute arises when the parties "disagree about *who should have the primary power to decide*" the arbitrability of the dispute. *Id.* (emphasis in original).

Regarding the first dispute (over the arbitrability of the merits), it is well-established "that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). But, as to the second dispute (over who has the power to decide arbitrability), it is likewise well established that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649. To overcome the latter presumption in favor of a judicial determination of whether the parties agreed to arbitrate, the parties must "clearly and unmistakably" delegate to the arbitrator the authority "to determine the relative merits of the parties' substantive interpretations of the

10

agreement" and whether it requires "the dispute . . . to be resolved through arbitration." *Id.* at 649, 651.

At first glance, Drake appears to frame the issue appropriately when he argues that "[t]he Drakes never expressly agreed to submit the arbitrability of the claim to the Dallas arbitrator. . . . The Arbitrator . . . therefore had no authority to decide the arbitrability of the dispute." Appellant Br. at 6. "Because these are gateway question[s] of arbitrability," Drake concludes, "the arbitrator exceeded his authority under 9 U.S.C. §10" and the resulting award should be vacated, not confirmed. *Id.* at 7.

Drake is correct that an arbitrator's lack of authority is one of the grounds for vacatur endorsed by the FAA. *See* 9 U.S.C. § 10(a)(4) (providing that the district court may vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made"). But an objection to an arbitrator's authority to determine arbitrability is capable of being waived. Put another way, an "[a]greement to have the arbitrator decide the issue of arbitrability 'may be implied from the conduct of the parties in the arbitration setting.'" *Vic Wertz Distrib. Co.*, 898 F.2d at 1140 (quoting *George Day Const. Co. v. United Bhd. of Carpenters*, 722 F.2d 1471, 1475 (9th Cir. 1984)). We have held that, "although a court is usually the proper venue for decisions about arbitrability, if the parties 'clearly and unmistakably' submit the issue to the arbitrator 'without reservation,' then the parties have waived their right to have a court make the decision." *Cleveland Elec. Illuminating Co. v. Utility Workers Union*, 440 F.3d 809, 813 (6th Cir. 2006) (quoting *Vic Wertz Distrib. Co.*, 898 F.2d at 1140). A party who asks an arbitrator to determine arbitrability, without first reserving the right to judicial determination of the same question, may not seek to vacate an award on the

grounds that the arbitrator exceeded their authority in so deciding. *Vic Wertz Distrib. Co.*, 898 F.2d at 1140.

Our decision in *Cleveland Electric* is instructive in applying these principles to the instant case. There, Cleveland Electric petitioned the court to vacate an arbitration award against it and in favor of a union representing both employees and retirees who received health benefits from Cleveland Electric. 440 F.3d at 811. Before the arbitrator, Cleveland Electric had argued that the union's grievance "was not arbitrable with respect to the retirees because they were not employees covered by the" collective bargaining agreement, unlike the current employees. *Id.* Cleveland Electric then "raised the issue of who should decide arbitrability for the first time in its brief to the district court" seeking to vacate the arbitration award. *Id.* at 812. There Cleveland Electric "argued that the arbitrator had no authority to determine arbitrability of the . . . grievance and, therefore, that his decision [was] void *ab initio*." *Id.* But, "[i]mportantly, at arbitration, Cleveland Electric did not argue that the arbitrator had no authority to decide the issue of arbitrability. Rather, Cleveland Electric's argument focused solely on the *arbitrability* of the retirees' health benefits." *Id.* at 811 (emphasis added). We affirmed the district court's refusal to vacate the arbitration award because "[t]he district court found, and this court agree[d], that Cleveland Electric waived the issue of who had the power to decide the arbitrability of the retirees' grievance by submitting the matter to arbitration 'without reservation.'" *Id.* at 813–14. This case is similar.

Drake argues that he did not submit the issue of arbitrability to the arbitrator "without reservation" and thereby did not waive his objection because "[his] course of conduct clearly indicate[d] that [he] did not wish to be bound by the arbitrator's decision on gateway issues of arbitrability." Appellant Br. at 20. He asserts that, during the course of arbitration, he objected to

the arbitrator's authority to decide "whether jurisdiction and venue were proper, [whether] the arbitrator was able to exercise jurisdiction over [Drake], and finally, what rules should apply to the arbitration." *Id.* at 21–22. But in the five years between the entry of the arbitration award and his instant motion to vacate, Drake never once argued that the award was invalid because the arbitrator lacked authority to decide arbitrability.

Instead, the record shows that the Drake thought he was not bound by decisions of the Dallas arbitrator, not because the arbitrator did not have the authority to decide arbitrability, but because Drake believed he had contracted to arbitrate the dispute under the MSA associated with the MDL, and not under the ARA.[4] *See* Johnson Action R. 13-3 (Arb. Tr. at 4–5) (Page ID #628–29) ("Your Honor, and I know you've ruled on this in the past, but we've objected to this forum. . . . I just wanted to renew that objection . . . that the MDL forum [is] the proper forum."). The arbitrator had ruled on the issue—after Drake presented his "Objections to Arbitration," the arbitrator found "that jurisdiction exist[ed] to arbitrate this matter between the parties and that the issues [were] arbitrable." Drake Action R. 25–4 (Interim Order at 2) (Page ID #631). In the final arbitration award, the arbitrator also commented that Drake had unsuccessfully "challenged jurisdiction based on the lack of *in personam* jurisdiction." Drake Action R. 10-3 (Final Corrected Award at 4) (Page ID #250).

---

[4]Drake at various times has also argued that the arbitration award was undermined by the arbitrator's partiality in favor of Johnson and nondisclosure thereof. *See, e.g*., Drake Action R. 7-1 (Mem. in Supp. of Mot. to Vacate at 8–9) (Page ID #57–58). He argued that the Northern District of Texas, where the Johnson Action was first filed, lacked personal jurisdiction over him. *See, e.g*., Johnson Action R. 9 (Mem. in Supp. of Mot. to Dismiss or Transfer at 12–16) (Page ID #131–35); R. 15 (Reply in Supp. of Mot. to Dismiss or Transfer at 5–6) (Page ID #1106–07); R. 36 (Objs. to Magistrate Judge's Findings, Conclusions, and Recs. at 1) (Page ID #2006). He argued the Johnson Action ran afoul of Rule 41's "two-dismissal-rule." *See, e.*g., Johnson Action R. 9 (Mem. in Supp. of Mot. to Dismiss or Transfer at 17–19) (Page ID #136–38). And he argued that service of process was insufficient in the Johnson Action. *See, e.g*., *id.* at 22–23 (Page ID #141–42); *id.* R. 20 (Suppl. Mem. at 1–4) (Page ID #1162–65); *id.* R. 38 (Resp. to Johnson Objs. to Magistrate Judge's Findings, Conclusions, and Recs. at 2–5) (Page ID #2023–26).

Drake's course of conduct demonstrates that his objection was about *whether* he had agreed to arbitrate before the Dallas arbitrator, not about *who* should decide the issue of arbitrability. It is evident from the record before us that, ever since Drake filed his first motion to vacate the award, his argument has been that the proper forum for the fee dispute was in arbitration pursuant to the MSA, not pursuant to the ARA because the ARA's initial agreement to arbitrate was "amended, modified, or otherwise superseded by the provisions of the MSA." *In re DePuy Orthopaedics*, 838 F. App'x at 924; *see, e.g.*, Drake Action R. 7-1 (Mem. in Supp. of Mot. to Vacate at 5–6) (Page ID #54–55) ("Any fee dispute should have been brought to [the MDL court]. . . . [T]he [MSA] has been interpreted to mean that attorney representation disputes should be referred to a Special Master in circumstances such as these. Furthermore, [the] MSA . . . states that 'any dispute over representation that cannot be resolved by the law firms may be submitted to the Special Master for review and resolution.' . . . Importantly, Johnson consented to the jurisdiction of [the MDL court] when he filed Mr. Drake's complaint into the MDL."); *see also* Johnson Action R. 9 (Mem. in Supp. of Mot. to Dismiss or Transfer at 19–22) (Page ID #138–41); R. 15 (Reply in Supp. of Mot. to Dismiss or Transfer at 4–5) (Page ID #1105–06); R. 36-1 (Brief in Supp. of Objs. to Magistrate Judge's Findings, Conclusions, and Recs. at 7) (Page ID #2015).

When Drake argued to the arbitrator that Drake could not be bound by the arbitrator's decision because the arbitration provisions in the MSA, and not the ARA, should govern the fee dispute and required arbitration in another forum, Drake attacked arbitrability itself, arguing that, in entering into the MSA, he had not contracted to arbitrate in Dallas. This fails to preserve his right to a judicial determination of arbitrability. *See Cleveland Elec.*, 440 F.3d at 813–14*; Interstate Brands Corp., Butternut Bread Div. v. Chauffeurs, Teamsters, Warehousemen &*

14

*Helpers Loc. Union No. 135*, 909 F.2d 885, 887, 890–91 (6th Cir. 1990) (holding employer waived judicial determination of arbitrability when it argued before the arbitrator that its employee's grievance was untimely and therefore not arbitrable since "the language of the Agreement indicate[d] a clear intention by the parties to foreclose the arbitration of untimely grievances altogether" because in doing so the employer "submit[ed] the issue of arbitrability to the arbitrator in the first instance," and the employer "implicitly agreed to have the arbitrator decide the issue of timeliness, and hence arbitrability . . . thereby waiv[ing] its right to have the court make those rulings" (internal citation omitted)); *Vic Wertz Distrib. Co.*, 898 F.2d at 1138, 1140 (similar); *Printing Serv. Co. v. Graphic Comms. Conf. of the Int'l Bhd. of Teamsters*, 493 F. App'x 632, 635–36 (6th Cir. 2012) (finding "the parties clearly and unmistakably submit[ted] the issue of arbitrability to the arbitrator without reservation . . . [and thus] waived their right to have a court make the decision" because the parties asked the arbitrator to determine issues of arbitrability, namely whether the employer was in fact bound by the collective bargaining agreement that commanded arbitration (quoting *Cleveland Elec.*, 440 F.3d at 813)).

Drake's arguments at arbitration and thereafter are not so different from the arbitrability disputes in the above cases. As an initial matter, the record clearly shows that Drake's contention has never been that the dispute was not arbitrable at all, but was always that he had agreed to arbitrate it in a different forum. Johnson Action R. 36-1 (Mem. in Supp. of Objs. to Magistrate Judge's Findings, Conclusions, and Recs. at 7) (Page ID #2015) ("the [ARA] specifies that a judgment can only be entered in a Court with jurisdiction over the matter. Johnson chose his jurisdiction when he participated in the MDL. The MDL is the only Court with jurisdiction over this matter."). More importantly for our purposes, Drake certainly did not argue in arbitration that

the Dallas arbitrator lacked the authority to decide which agreement was binding. In fact, by putting to the arbitrator the question of which contract's jurisdictional provisions should govern, Drake asked the arbitrator to resolve a question of whether the Dallas arbitration could go forward under the ARA—this was a "question of whether the parties agreed to arbitrate." *See AT&T Techs., Inc.*, 475 U.S. at 649. By arguing arbitrability before the arbitrator and failing to reserve an objection to the arbitrator's authority to decide that question, Drake "clearly and unmistakably submit[ted] the issue [of arbitrability] to the arbitrator without reservation." *Cleveland Elec.*, 440 F.3d at 813 (quotation marks omitted).

Having determined that Drake waived his right to a judicial determination of arbitrability, we would ordinarily proceed to a deferential review of the arbitrator's determination that the dispute was in fact arbitrable. *See Cleveland Elec.*, 440 F.3d at 812. "If the parties have agreed to allow the arbitrator to decide arbitrability, the district 'court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances,'" *id.* (quoting *First Options*, 514 U.S. at 943), and "the court's standard for reviewing the arbitrator's decision about [arbitrability] should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate," *First Options*, 514 U.S. at 943.

Drake, however, does not contest arbitrability before us. Indeed, as far as we can tell, he has never argued that the fee dispute itself should have been resolved in the courts. Our prior review of this case came to the same conclusion. *In re DePuy Orthopaedics*, 838 F. App'x at 924

16

("To be clear, the issue is not *whether* the parties agreed to arbitrate any fee disputes between them under the express terms of the ARA—everyone accepts that they did.").[5]

Because Drake does not challenge arbitrability, and because, by his conduct, Drake delegated to the arbitrator the authority to determine that the dispute was arbitrable, Drake's proposed grounds for vacatur, 9 U.S.C. § 10(a)(4)—providing that the district court may vacate an award "where the arbitrators exceeded their powers"—does not constitute grounds for reversal. Nor has Drake offered any other such grounds.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM**.

**KAREN NELSON MOORE, Circuit Judge, concurring.** I write separately to voice my extreme disapproval of attorney Steven M. Johnson's conduct in this case. After aggressively soliciting Drake's business, Johnson did little on his behalf but file a form complaint that ultimately had no legal significance. *See Drake v. DePuy Orthopaedics*, 757 F. App'x 449, 450–51 (6th Cir. 2018). Johnson did so a year into the representation and only after he was made aware that Drake might take his business elsewhere. *See id.* at 451. Johnson had nothing to do with Drake's ultimate recovery based on the defective hip implants, but nonetheless Johnson spent ten years harassing Drake for the lion's share of it. Because Drake did not or could not bargain for more favorable contract terms before signing the ARA, Johnson walks away with an unearned windfall. "[A]s a

---

[5]Johnson argues that this statement conclusively decided the issue of arbitrability, "render[ing] the arbitrator's arbitrability determination immaterial, and provid[ing] exactly the judicial determination of . . . arbitrability" that Drake sought. Appellee Br. at 13–14. We do not endorse or reach this proposition. Nor do we reach the parties' arguments about whether our most recent remand precluded the district court from addressing Drake's arguments about the arbitrator's authority to decide arbitrability.

member of the legal profession," Johnson "is a representative of clients, an officer of the legal system and a public citizen *having special responsibility for the quality of justice.*" Model Rules of Pro. Conduct Preamble (Am. Bar Ass'n 1983) (emphasis added). Johnson has failed to uphold this duty and, though there may be no legal obligation to do so, he has an *ethical* duty to refund the money that is rightfully Drake's. Conduct like Johnson's results in disrespect for the legal profession.